In the Matter of Caroline Mary BROOKS and Irene Marie Brooks, also known as Caroline Mary Doe and Irene Marie Doe.

Floyd BROOKS and Ida Irene Brooks, Petitioners-Appellants,

v.

DIVISION OF CHILDREN'S SERVICES OF the DEPARTMENT OF WELFARE OF the CITY OF ST. LOUIS, Respondent.

No. 32212.

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1967.

Dewey S. Godfrey, Jr., St. Louis, for petitioners-appellants.

Thomas F. McGuire, City Counselor, John J. Fitzgibbon, Daniel T. Tillman, Associate City Counselors, St. Louis, for respondent.

ANDERSON, Judge.

This is an appeal from a judgment of the Juvenile Division of the Circuit Court of the City of St. Louis. The proceeding was initiated by Floyd Brooks and Ida Irene Brooks, husband and wife, filing a petition in said court in which they sought an order of transfer of legal custody and adoption of two children then in their physical custody without previous order of court. Raymond Howard, a member of the bar, was appointed guardian ad litem for said children. Thereafter, the Juvenile Officer of said court filed a petition alleging that said children were neglected within the meaning of Section 211.031, RSMo 1959, V.A.M.S. The issues raised by both pleadings were tried together. At the conclusion of the hearings, the court denied the Brooks' petition but sustained the petition filed by the Juvenile Officer, and ordered said children placed in the care, supervision and control of the Division of Childrens Services. Floyd Brooks and Ida Brooks have appealed from the order and judgment denying their petition.

Floyd Brooks and Ida Brooks are husband and wife and have been married for 30 years. There have been no children born of their marriage. They live at 5037 Benedict Street in St. Louis. The house in which they live has four rooms and a bath. Mr. Brooks purchased this house in 1955. He and Mrs. Brooks have resided there since buying it. The purchase price was $4800, with monthly payments of fifty dollars on the purchase price. At the date of the hearing (September 28, 1964), Mr. Brooks was 55 years old and Mrs. Brooks, 49. Mr. Brooks at said time was employed by Lueking Transfer Company as a chauffeur and private watchman. He had been so employed for sixteen years. His weekly take home pay ranged between $191 and $210. Mrs. Brooks was not employed. At the time of the hearing, the older child, Caroline Mary was 5 years of age and the younger child, Irene Marie, was ten months old. The Brooks had given the children their names after receiving them into their home. They are not siblings.

Caroline was left at the Brooks' home in August 1959. Mr. Brooks testified that he was at home at the time. Mr. Brooks testified that a woman came to the house with Caroline. Mrs. Brooks opened the door and this woman placed the child on a bed and said, "Either take the baby or I'm going to throw it in the garbage can." He further testified that because the baby looked so dark he asked the woman if the child was colored, and she replied it was not, that she said the baby was a month old, "and out the door she went."

Mr. Brooks further testified that he had never seen the woman before; that he had never ascertained her name or whether or not she was married; that the day she brought Caroline to the house was the first and last time he ever saw her; that he had not heard from her since; that from friends, he heard she was a just a tavern bum and "shacked up" with everybody; that these people did not know her name, but knew her from the description of her which he gave, "small blond." Mr. Brooks did not reveal the names of these people.

There was testimony given by Marguerite Arand, a Deputy Juvenile Officer and social worker, which cast doubt as to the truthfulness of Mr. Brooks' testimony. She stated that Mr. Brooks gave information to her

and other workers which was different from that given by him in court.

She was requested by petitioners' counsel to put that information in the record. She replied that this occurred in an interview by the "intake department," which as appears in the transcript is as follows: "3/3/64; Mr. Brooks did the talking; stated that they had Caroline since she was four weeks old. He met the mother once prior to bringing the child to their home; denies the child is of mixed parentage; stated he did not know the mother of the child's legal name; that he had this information written down at home and will call juvenile officer with this information."

Miss Arand further testified that another worker, C. Atkins, contacted Brooks by phone and that Brooks in response to her inquiry stated he had misplaced the paper upon which he had written the needed information, and was still looking for it; that this worker called the Brooks' home again on several occasions but got no response; that another worker, Ann Forder, went to the Brooks' home on March 10, 1964, but Mrs. Brooks would not tell her where the children came from and denied that Caroline was a mulatto, but stated she was of French descent. Miss Arand further stated, " * * * I talked to Mrs. Brooks in her home on 5/18/64. And, then I interviewed Mr. and Mrs. Brooks in the office on 5/21/64. * * * Mr. and Mrs. Brooks stated they knew nothing about the parents of Caroline and Irene Marie, but on further discussion with them Mr. Brooks stated he met the mother of Caroline on one occasion at the home of John Bradshaw, 2677 Olive Street. In the interview with Mr. Brooks he claimed he did not know the whereabouts of Mr. Bradshaw because he had not seen him for some time; however, in the file here we do have a letter of reference from Mr. Bradshaw. I also telephoned Mr. Bradshaw, and Mr. Bradshaw stated he did not know the mother of Caroline * * *."

Mr. Brooks testified he was not at home when Irene Marie was brought to petitioners' home on June 28, 1962; that she was two or three da ld at the time; that he did not know her mother was coming, and that he thought she just arrived and knocked on the door like the other woman did.

Mr. Brooks further testified that he owned six dogs. Five of these dogs were kept in the basement and one upstairs. He also has eight birds, parakeets and canaries, and one cat. He stated he would get rid of these pets if the court so desired. He further testified that he and his wife were willing to raise both children as their own if the court should grant a decree of adoption. He stated he was unable to obtain the written consent of either of the parents of these children for the adoption.

Ida Irene Brooks testified that she was at home when Irene was brought to petitioners' home. She stated that the woman who brought Irene identified herself as the mother of the child; that she had never seen the woman before, nor had she seen her since; that she did not inquire of the mother how old the child was but from its looks it was two days old; that she made no effort to find out the identity of the mother; that the woman came in and said, "This is your baby,"; and that she did not ask the woman her name or ask her anything about the baby. Mrs. Brooks testified that she was home when the first child, Caroline, was brought to their house; that she had no conversation with the woman who brought Caroline; and at the present time, she did not know the name of this woman or where she lived.

Mrs. Brooks in her testimony, corroborated her husband's account of the previous arrival of Caroline in their home. She stated she had no conversation with Caroline's mother at the time.

Mrs. Brooks further testified that the children were healthy; that they were not

then under the care of any physician, but that when they did require medical attention they were taken to Dr. Fowler or to Dr. Stein; that Dr. Fowler's office was located at 5000 N. Broadway and Dr. Stein's office was on Grand Avenue; that she was not employed and if a decree of transfer of custody and adoption should be granted she would treat these children as her own. She further testified that she was brought up in the Catholic faith, but did not have a chance to go to church on Sundays, because her husband works on that day; that her husband was not a Catholic and for that reason, their marriage was not accepted by the Catholic Church as being a legitimate one, but that she and her husband were thinking about being married in the Catholic Church. She further stated that if she and her husband were given the children they would be raised in the Catholic faith.

Miss Arand was asked by petitioners' counsel to state to the Court what her investigation revealed. She replied:

"A. Yes, Sir. My recommendation is that—writer is recommending that the care, control and supervision of the Brooks children, also known as Doe, be granted to the Division of Children's Services, City of St. Louis, since a neglect petition has been filed on instructions from the Court, and is now pending at the Circuit Clerk's office. Writer is not making a recommendation for the transfer of custody for the following reasons.

"The Brooks claim they know nothing about the natural parents except that the children were left in their home by the mothers of the children. The Brooks have given exact birth dates. The information given in the court today differs from information given to other officers in the official file and some information given to me in interviews with the Brooks. It's writer's opinion that the Brooks do have some knowledge of the background of the children, but are refusing to divulge it. There is also a physician in the City of St. Louis who delivered the youngest child, Irene. His name is Dr. Leonard Stein. He did not give me exact information because he said it was confidential. But he did admit delivering the child. * * * these children were abandoned by their mothers in the Brooks' home and this matter should have been referred to the St. Louis Police Department since they were abandoned children. Also, we have a letter from the Division of Pupil Welfare, Board of Education, which is attached to the file. That file—I mean that letter indicates that Mrs. Brooks was in special schools and also has an I.Q. of 52 as of October 7, 1926. * * * there are a number of animals in the home. They have not been annoying me in any way, but according to the Health Department regulations I understand that if you have more than three dogs you're supposed to have a kennel license. This is a very questionable situation, and I cannot recommend the transfer of custody. The children receive adequate food and probably protection. The Brooks do live in a commercial area east of Broadway which is not a desirable area in which to raise children that are to be adopted through a private placement."

Miss Arand further testified that she had made three visits to the Brooks' home. The children were clothed and as clean as could be expected; that they seemed to be properly fed; that Caroline seemed to be adjusted to the surroundings of the home and is very bright and alert, unusually so for her age; that she saw some of Caroline's drawings which indicated some artistic capacity, quite capable of lettering with her hands, good dexterity and coloring.

Miss Arand also testified apparently from notes as follows:

"A. On 9/24/64 I telephoned Dr. Stein * * * Dr. Stein stated he knew the Brooks family very well. Writer asked him about the delivery of the Brooks'

children. He stated that he had delivered the child of a woman * * * who's known as Irene Caroline Brooks. He had delivered this child to a woman who is on A.D.C., but she gave him a fictitious name. When writer tried to obtain further details, he stated he did not remember the name of the child, the hospital where the child was delivered, and so forth, and furthermore this information was confidential. He stated that this mother at one time wanted to get rid of the child during her early months of pregnancy, but he talked her into carrying the child through pregnancy. The mother threatened to abandon the child and so forth, but then she gave the child to the Brooks. He claims that he did not make the placement because it's illegal. He also stated that the oldest child was brought to him for medical attention by the Brooks when the child was six weeks old. The child is part colored and the Mexican or Cuban mother was going to abandon the child. Writer was unable to secure any more information regarding the children from him."

Miss Arand further testified: "This child was delivered by Dr. Stein, and the record must be available at his office fictitious or not fictitious. If we had the name under which he delivered the child and the hospital, this information could be verified at the Bureau of Vital Statistics. It might give me a lead." She further testified that Caroline seems to like the Brooks and seems to be happy with them, but that in adoptions one had to look to the future of the child and to the child's growth and development; that almost anyone can help cultivate children but when they hit the upper grades is where you might find a difference in training children; that she felt that when a person is retarded the children may not have the best education that could be available to them; that she did not ascertain Mr. Brooks I.Q. and that she would not say there was any physical abuse or neglect of these children by the Brooks.

Miss Arand also gave the following testimony:

"Q. Did you interview any people in the neighborhood as to the type of home training the children were receiving?

"A. No. * * * Very frankly, being very honest with you, I am afraid to go into that area alone, and I don't like the area. I came down in a cab the first time I visited there, and I walked up and I was worried. The last two visits I made I made with Mrs. Vergie Dunbar, a staff member, who has a car. If she would not have been able to go up with me I would have taken a cab. Frankly, I don't like the neighborhood. I don't like the environment * * * I wouldn't say it's a high crime (neighborhood) because there is not many people there, * * *.

"Q. So, actually you didn't get any opinions from the neighborhood about the Brooks' family?

"A. No. * * * Except by letters that we have in the file here. They've got quite a number of them."

The record shows that a subpoena for Dr. Stein was issued, to which a return was made that Dr. Stein could not be found. Dr. Stein did not appear and did not testify at any of the hearings.

Petitioners introduced in evidence a communication from Dr. G. Fowler, an osteopathic physician of St. Louis. It was addressed: "TO WHOM IT MAY CONCERN," and reads as follows:

"I examined Mrs. Brooks on 9/2/64 and found her to be in good health and free of all communicable and contagious diseases. She is capable of taking care of children. We have known Mrs. Brooks for the past six or seven years as a patient. I found her good character and a fit mother."

Petitioners also introduced a letter dated July 30, 1964 from Dr. Leonard P. Stein

addressed to petitioners' counsel. Said letter reads as follows:

"A general physical examination was performed on the 20th day of July, 1964. Mrs. Brooks was found to be physically fit and healthy. An I.Q. test and a psychological test was made and the following is the score.

| | | |
|---|---|---|
| Addition and subtraction | 22 | Points |
| Memory | 22½ | " |
| Reading | 30½ | " |
| Definition and interpretation of words, | 22½ | " |
| Writing | 10 | " |
| General knowledge of historical data and facts, | 10½ | " |
| Total, | 118 | Points |

"This woman has a good general knowledge of things about the house. Her knowledge of culinary art is very good. She knows a great deal about raising children. Her character is good. She brings the children regularly to church and keeps the children clean at home. I do not believe that the surprised inspection of the home is good for this woman. The husband as well as the wife have become frantic and nervous and apparently it appears that this policing of her home is not good for her."

At the conclusion of the evidence the court stated: " * * * this Court will find that the burden has not been sustained by the petitioners to show that the welfare of the children would best be served by approving a transfer of custody. This Court will find that the best interest of these children would be served at this time by a transfer of custody to Children's Services of St. Louis, and will hereby order that the custody of these children be transferred to Children's Services of St. Louis, * * *." Judgments were thereafter entered in conformity with these findings.

Appellants contend that the trial court erred in denying their petition for transfer of custody, and that this court should reverse the judgment and order the children restored to their custody. In support of this contention, it is urged that the evidence shows that these children were well taken care of by the Brooks; that they were well fed, and properly clothed; that they were well adjusted in the Brooks' home; that Mr. and Mrs. Brooks loved both of these children as they would their own and that the children in turn loved Mr. and Mrs. Brooks; that there was no evidence which even tends to show that the best interest of the children would not be served by granting custody to Mr. and Mrs. Brooks as a preliminary step to legal adoption by them.

■ There is no dispute between the parties as to the principles of law applicable. These have been stated many times in the decisions of the courts of this state, the most recent of this court being, In Re Neusche, Mo.App., 398 S.W.2d 453. In that case, as in others which have dealt with the subject, it is pointed out that the primary and paramount consideration in such cases is the welfare of the child; that the future welfare of the child is of extreme importance; and that the burden of proof is upon those seeking custody of a child or children to establish the facts justifying a decree of transfer of custody. In that case it is also pointed out that the trial court has a wide discretion in such matters which will not be disturbed on appeal unless it can be said from the whole record that there was an abuse thereof. It is also provided by Civil Rule 73.01(d) V.A.M.R., that a judgment of a trial court shall not be set aside unless it is clearly erroneous.

■■ We must indulge the presumption that the trial judge in reaching his decision considered all of the evidence, and that his findings were based solely upon the evidence adduced and that he was motivated by what he believed was best for these children. In Re Neusche, supra. We have reviewed the evidence and find that it is amply sufficient to support the conclusion that petitioners failed to sustain their bur-

den of proof, i. e., that the best interest of the children would be served by placing them in the legal custody of petitioners for the purpose of adoption. We reach the same conclusion.

It is also urged that the court failed to take into consideration the recommendation of Mr. Howard, the guardian ad litem appointed by the court for the children. Mr. Howard was present at the trial and participated in the questioning of the witnesses. At the conclusion of the evidence, Mr. Howard stated he did not think that Miss Arand's testimony made a prima facie showing that petitioners were unfit to have the custody of the children pending the adoption; that her evidence showed only how the children came into their possession which he doubted should be a determining factor on the issue of transfer of custody. He also stated, "I don't think there's been any evidence to prove that the Brooks lack the intelligence or the desire to raise these children in the way they should be raised." The judge, after hearing Mr. Howard's views, announced his decision. We find no merit to the point raised. The court was not bound by any opinion or recommendation of the guardian ad litem. The sole responsibility for a decision in the case rested upon the trial court. This he did after a full and complete hearing. In our opinion, his decision should be affirmed.

The judgment appealed from is affirmed.

WOLFE, P. J., and RUDDY, J., concur.