**John K. FRANCKA and Larry A. Tyrrell, Guardian Ad Litem, Appellants,**

v.

**Joann FRANCKA, Respondent.**

No. 21060.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 20, 1997.

Charles (Ed) Lee, Walker, Salveter, Lee & Graff, Springfield, for appellant Francka.

Charles B. Cowherd, Husch & Eppenberger, Springfield, for appellant Tyrrell.

David A. Fielder, Lisa A. Ghan, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for respondent.

PARRISH, Judge.

John K. Francka (husband) appeals various awards the trial court made in the action he brought against JoAnn Francka (wife) for dissolution of marriage. He appeals the custody award, the award of maintenance to wife, the award of attorney fees to wife, the order that he pay guardian ad litem fees, and the order that he pay capital gains taxes on insurance proceeds received by reason of a fire loss to a residence owned by the parties. The guardian ad litem also appeals the child custody order. This court affirms.

This being a non-jury case, the judgment of the trial court is reviewed in accordance with Rule 73.01(c). The judgment is to be affirmed unless there is no substantial evidence to support it or it is against the weight of the evidence, or unless it erroneously declares or applies the law. *In re Marriage of Lawry*, 883 S.W.2d 84, 86 (Mo.App.1994). The evidence is viewed in the light most favorable to the judgment. *Id.* at 86–87.

The parties were married October 14, 1989. They have one child, a daughter, who was six years old at the time of trial.

The parties were living in Hartville, Missouri, when they separated March 17, 1995. Wife and the child moved to Springfield, Missouri, where they lived with wife's parents. Wife filed a petition for dissolution of marriage in the Circuit Court of Greene County, Missouri.

In April 1995, husband and wife discussed the possibility of reconciliation. They spent time together and began looking at houses and property to purchase. Husband asked wife to dismiss her Greene County action for dissolution of marriage. On June 16, 1995, she dismissed the lawsuit.

Wife's stepfather became ill May 16, 1995, and was hospitalized in Springfield. Wife requested that husband keep their child when her stepfather became ill so she would be available to assist her mother. He kept the child and wife remained with her mother at the hospital where her stepfather was being treated. Wife's stepfather died May 22, 1995. After his death, wife continued assisting her mother in concluding her stepfather's business affairs.

In July, wife and her brother went on a week-long cruise with her mother. Wife's mother took the two of them on the cruise as an expression of appreciation for the assistance they provided during the time wife's stepfather was ill and after his death. The parties' daughter stayed with husband while wife was away from July 22 through July 29.

When wife returned she attempted to contact husband but was unable to do so until Monday, July 31, 1995, when she left a message at his place of employment for him to call her. That same day, July 31, husband filed his petition for dissolution of marriage in the Circuit Court of Wright County, Missouri—the action that is the subject of this appeal.

Husband returned wife's call. He did not tell her he had filed the dissolution action. Wife asked when he was bringing their daughter back to her. He answered, "We'll be up this evening after work."

Wife was served with process in the dissolution action August 2, 1995. The child had been with husband in Wright County when the petition was filed and remained there at the time wife was served. Wife called husband and asked why he filed the petition. He told her he wanted to have their daughter close to him and have her in the Hartville school.

Wife returned to Hartville a short time later and resumed living with husband and their daughter in a house trailer. She stayed "[a]bout a week and a half," until August 30. Wife was asked the following questions and gave the following answers:

Q. And what occurred on August 30th?

A. On my way coming back home I met [husband] heading toward Marshfield. I pulled up to the driveway, got out of the car, found a—my bag of makeup and hair dryer and stuff on the front porch.

Q. Had you and he had previous discussions that you should move out?

A. No.

Q. So what did you do when you arrived at the trailer?

A. I got the bag, I put it in the car, and I waited for him because I figured he'd turn around and come back.

Q. Did he eventually show up?

A. Yes.

Q. And what took place at that time?

A. I asked him if I could have the rest of my stuff, and he said sure. And I got it and left.

■ The trial court dissolved the marriage; awarded wife monthly maintenance for a period of three years; divided marital property; set over nonmarital property to wife; allocated marital debts between the parties and ordered each party to "assume and pay" the debts that were "set aside" to him or her and to hold the other party harmless as to the debts that party was ordered to pay; ordered husband to pay $17,781.50 to wife to compensate her "for the dissipation of marital insurance proceeds by [husband]"; ordered husband "to pay any capital gains taxes which may occur as a result of the failure to properly reinvest the proceeds" from insurance benefits paid as a result of a fire loss sustained by the parties; awarded joint legal custody of the child to husband and wife; awarded "primary physical custody" to wife and granted extensive "rights of visitation" to husband;[1] ordered husband to pay child support in the amount of $412.55 per month; declared which parent would be entitled to claim the child as a dependent for federal and state income tax

purposes; assessed responsibility for providing medical insurance and paying medical expenses for the child; ordered husband to pay wife's attorney fees in the amount of $20,000; and ordered husband to pay court costs including the guardian ad litem fee of $600.

### Child Custody

Husband's first allegation of trial court error is directed to the child custody order. Point I asserts the trial court erred in awarding "primary physical custody" to wife because the award was not in the best interests of the child. Husband contends the evidence established he "provided a better and more stable home environment and the child has stronger ties with [his] community"; he "possesses better parenting skills than [wife] and the child is more closely bonded with [him]"; and "the guardian ad litem's actions, investigations and reports confirmed that [the child] was closely tied with, supported by and given stability by the school, church and community associations provided while in ... [husband's] primary physical custody, and that the trial court failed to properly monitor the guardian ad litem's performance."

As explained in n. 1, *supra*, the trial court's classification of the award of custody to wife as "primary physical custody" was a mischaracterization. The parties were granted joint physical custody. As was done in *Rinehart v. Rinehart*, 877 S.W.2d 205, 207 (Mo.App.1994), Point I will be considered as contending the joint custody order's allocation of time when the child resides with each parent or under their care and supervision was contrary to the child's best interests.

Husband was granted the right to visit with the parties' child during times the child was in the care and custody of wife "upon reasonable notice to [wife] of intention to exercise said visitation." He was granted further visitation "[e]very other weekend

---

1. The trial court erroneously characterized the custody awarded to wife as "primary physical custody" and the custody awarded to husband as "rights of visitation." Each parent was awarded significant periods of time during which the child was to reside with them and was to be under their care and supervision. Such arrangements constitute "joint physical custody." § 452.375.1(2), RSMo Supp.1995. *See Rinehart v. Rinehart*, 877 S.W.2d 205, 207 (Mo.App.1994); *In re Marriage of Miller*, 876 S.W.2d 289, 290 (Mo.App.1994); *In re Marriage of Johnson*, 865 S.W.2d 412, 415 (Mo.App.1993).

from 6:00 p.m. on Friday until 6:00 p.m. on Sunday."

Each party was given temporary custody of the child for designated periods on alternating holidays. The applicable holidays were specified. Husband was allowed custody on father's day and wife on mother's day.

Husband and wife were each granted custody for two nonconsecutive two-week periods during the summer of each year. Husband was permitted to "see the minor child one (1) evening per week on Wednesday from 5:30 p.m. to 7:30 p.m." Wife was awarded custody during times not otherwise specified. Husband contends this custody arrangement was not supported by substantial evidence and was against the weight of the evidence.

■ In considering the sufficiency of the evidence, this court presumes the trial court reviewed all the evidence and decided the custody issue in a manner consistent with the child's best interests. *Ledbetter v. Sampson,* 924 S.W.2d 617 (Mo.App.1996). The trial court is in a better position to judge credibility of witnesses, their sincerity, character and other intangibles than is an appellate court that limits its review to the study of a written record of testimony. *P.L.W. v. T.R.W.,* 890 S.W.2d 688, 690 (Mo.App.1994). Accordingly, a trial court has broad discretion in determining child custody. *Id.* Greater deference is accorded a trial court's decision in custody cases than in other types of cases. *Breckner v. Coble,* 921 S.W.2d 624, 626 (Mo.App.1996); *Johnson v. Johnson,* 839 S.W.2d 714, 717 (Mo.App.1992).

■ The trial court found:

The Court finds that [wife] has been personally involved in the care and support of [the child] from her birth. The Court finds that [wife] has been involved in [the child's] education, has consistently allowed [husband] liberal contact with the minor child, and has promoted the relationship between [the child] and her father. The Court finds that [the child] has numerous relatives in the Springfield area and that Springfield Catholic Schools is an appropriate institution at which [the child] may be educated.

The trial court then assessed the testimony of two psychologists and a clinical social worker who testified at trial concerning the child custody issue. Each had evaluated the child.

The trial court found testimony from each practitioner to be credible. It noted there was testimony that husband and wife "were normal, healthy individuals"; that there were "no concerns about either party's fitness as a parent." It noted that two of the witnesses concluded that the "minor child has exhibited remarkable resilience and is able to adapt and adjust to changes in her life." The trial court found "credible" testimony "indicating the minor child has a strong bond with her mother and has a psychological and developmental need for a female role model." It found "no psychological reason why either parent should not have significant contact with the minor child."

The record on appeal discloses sufficient evidence to support the trial court's findings and determinations as to custody. There was evidence that wife cared for the child since birth. Wife testified that she stayed home with her and provided care. She bathed her, fed her, changed diapers when she was a baby, nursed her and took her to the doctor when she was sick. She washed the child's clothes and cooked for her. Wife testified that since the child's birth, until the parties separated, she performed ninety-five percent of the child care responsibilities. When wife began working outside the home, she assured the child was dressed and ready to go to the babysitter or to school before she left for work.

Wife explained her involvement in her daughter's schooling. She was asked what activities she attended. She answered, "Her parties that she's had at school. I've gone to the teachers' meetings. I went to the meeting the day before school started. I talked to the teacher on the phone in the evenings to see how she's doing."

The evidence supports the trial court's finding that there were numerous family members in Springfield where wife resides. In addition to wife's mother who lives there, wife has aunts, uncles, cousins and a brother

there. The child regularly visited those family members when wife had custody of her.

Husband further complains that the custody award was contrary to the guardian ad litem reports. The guardian ad litem has joined in the appeal and filed a separate appellant's brief herein. He asserts two points on appeal. His first point (GAL Point I) will be addressed elsewhere in this opinion in that it is directed to the interaction between an appointing court and an appointed guardian ad litem. The guardian ad litem's second point (GAL Point II), however, addresses the same issues presented by husband's Point I.

GAL Point II contends the trial court erred in making its custody award; that the award of "primary physical custody" to wife "was not supported by substantial evidence or was against the weight of the evidence in that [husband] had actual custody of the minor child for nine months before the trial of the case and no justification was offered by the trial court for a change of custody to [wife]."

■ As heretofore set out in response to husband's Point I, the custody order was supported by substantial evidence. It is not against the weight of the evidence. GAL Point II asserts further, however, that no "justification" was given by the trial court "for a change of custody to [wife]." This refers to the fact that husband had the child in his temporary custody when his dissolution action was filed and, therefore, had legal custody of her prior to and at the time of trial.[2] This assertion likewise fails.

The award of custody to wife was an initial determination of child custody, not a modification of custody. Section 452.375[3] governs initial custody determinations. The determination to be made is what custody arrangement is in the best interests of the child. No showing of a change of circumstances is required. *D.K.L. v. L.C.L.*, 764 S.W.2d 664, 666 (Mo.App.1988). *See also Baumgart v.*

*Baumgart*, 944 S.W.2d 572, 576 (Mo.App. 1997). GAL Point II is without merit.

Husband's remaining complaint in Point I is directed to the guardian ad litem's recommendation to the trial court. The guardian ad litem filed home study reports regarding both husband's and wife's home. He also filed a report and recommendation concerning the award of custody. The guardian recommended the award of "primary physical custody" to husband. Husband, in the last part of Point I, contends the trial court erred in not following the guardian ad litem's recommendation. He asserts "that the trial court failed to properly monitor the guardian ad litem's performance."

Appointment of a guardian ad litem is permitted by § 452.423.1 in "proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue." Section 452.423.2 specifies duties the guardian ad litem is to perform. It states that a guardian ad litem is the child's legal representative "at the hearing" and permits the guardian ad litem to "examine, cross-examine, subpoena witnesses and offer testimony." § 452.423.2(1). It directs the guardian ad litem to "conduct all necessary interviews" with appropriate persons prior to any hearing "to ascertain the child's wishes, feelings, attachments and attitudes." § 452.423.2(2). It permits a guardian ad litem to make recommendations to a juvenile officer to file a petition in the juvenile division of the circuit court under circumstances in which the child appears to be in danger. § 452.423.2(3).

The guardian ad litem's "Report and Recommendation of Guardian ad Litem" was filed after the trial but before the trial court received proposed findings from the attorneys for husband and wife. The case was tried over the course of three days, April 15, 16 and 18, 1996. The guardian ad litem did not attend the trial until the last day when the presentation of evidence was nearly com-

---

**2.** § 452.310.3, RSMo 1994, requires the party filing an action for dissolution of marriage to state in the petition "which party has actual custody of any minor children." It provides, "Thereafter, until permitted to do so by order of the court, neither party shall remove such minor children ... from the care and custody of the party which has custody of the children at the time the action is filed."

**3.** References to statutes are to RSMo 1994.

pleted. His report was filed April 23, 1996. The trial court entered its findings, conclusions and judgment May 17, 1996.

■ Husband complains the trial court did not follow the guardian ad litem's recommendation as to the award of custody. He also complains the trial court "failed to properly monitor the guardian ad litem's performance." The first complaint may be resolved in summary manner. "The court is not bound by the opinion or recommendation of the guardian ad litem." *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 385 (Mo.App. 1993). "The sole responsibility for a decision in the case rested upon the trial court." *Brooks v. Division of Children's Services*, 411 S.W.2d 276, 282 (Mo.App.1967).

■ Husband's argument concerning failure to monitor the guardian ad litem centers on the guardian ad litem not being present during the course of the trial. At the start of the trial, the trial judge stated that the role of the guardian ad litem had been discussed "[p]rior to going on the record." The judge stated, "And everyone has agreed that it is— it will be left up to the guardian ad litem's discretion as to what parts of the trial he participates in and what parts he does not participate in."

■ No objection was made to the trial court's statements concerning the guardian's involvement at trial. "A party is not entitled to have issues considered on appeal which were never presented to or passed on by the trial court." *In re Marriage of Campbell*, 868 S.W.2d 148, 151 (Mo.App.1993). Husband did not preserve the matter about which he now complains for appellate review.

■ Notwithstanding husband's failure, this court elects to review the function of the guardian ad litem as permitted by Rule 84.13(c) to ascertain if manifest injustice or miscarriage of justice occurred. It is appropriate to recognize the purpose a guardian ad litem serves. Husband's brief characterizes the guardian ad litem "as the minor child's trial counsel." That characterization is not altogether correct. The guardian's alle-

giance is to the court. *Weinstock*, 864 S.W.2d at 385. "Although the best interests of the child are always paramount, the guardian's relationship to the child is not strictly that of attorney and client." *Id.*

■ Under the facts of this case, this court finds no manifest injustice or miscarriage of justice from the fact the guardian ad litem's role was limited in this case so as to not be required to attend the dissolution trial. Considering the significant work the guardian ad litem performed in investigating the respective homes of the parents and reporting on his finding in writing to the court, and in filing a further written report that included his recommendations as to the award of custody, this court finds no plain error. Husband's Point I and GAL Point II are denied.

Point II contends the trial court erred "in ordering child custody transferred[4] ... and in finding that [husband] used deception in obtaining the minor child's physical custody just prior to filing for dissolution of marriage." It contends the trial court's findings in this regard were not supported by substantial evidence and were against the weight of the evidence.

Point II is directed to husband's involvement in asking wife to dismiss the petition for dissolution of marriage she filed and, thereafter, following his participation in reconciliation efforts that he initiated, filing his own petition for dissolution of marriage. The trial court found "that the actions of [husband] in this matter were deceptive and designed to gain an advantage in this custody litigation, and have not been in the child's best interest."

■ Viewed in the light most favorable to the decree, there was sufficient evidence at trial to support the trial court's custody order. Viewed in that light there was sufficient evidence to support its determination concerning husband's use of deception to secure temporary custody of the child at the time of filing his petition.

4. As previously discussed, the determination here was an initial custody determination, not a change of custody. The applicable statute is

§ 452.375, not § 452.410. *D.K.L. v. L.C.L., supra; Baumgart v. Baumgart, supra.* See n. 2, *supra.*

After discussing reconciliation, husband requested that wife dismiss her petition to dissolve the marriage. She dismissed the petition June 16, 1995. On July 12, 1995, husband contacted his attorney and asked the attorney to prepare a petition for dissolution of marriage. Husband filed the petition in the Circuit Court of Wright County July 31, 1995, at a time when he had physical custody of the child. Wife was served with summons August 2, 1995. Husband had not told wife he wanted to file for dissolution of marriage before that time. She did not know he had done so.

The parties first separated on March 17, 1995. Wife had physical custody of the child. Wife took her to live with wife's parents in Springfield. She filed a petition to dissolve the marriage that same date.

Section 452.375.2 states that in awarding child custody the trial court may consider all relevant factors in determining what is in the best interests of the child. The trial court's finding stated husband's deceptive actions that permitted him to gain advantage in the custody litigation were not in the child's best interests. The trial court considered the evidence relevant as to the question of what was in the child's best interests. It did not abuse its discretion in so doing. Point II is denied.

Point III is directed to the trial court's refusing to admit in evidence an oral recommendation and a written recommendation of a clinical social worker as to child custody. The social worker counseled the child at the request of husband for approximately one year. Husband sought to admit a written report that included the social worker's opin-ion concerning the award of child custody and to have the social worker testify about her opinion as to how custody and visitation should be awarded. Wife objected to the admission of the exhibit in evidence and to the testimony as to the social worker's opinion on the basis that the witness was not entitled to "offer testimony on the ultimate issue" the trial court had to determine; that the evidence invaded the province of the court. The trial court sustained the objections.

Husband's Point III asserts the trial court erred in not admitting the exhibit or the oral testimony of the witness. Husband argues the evidence was relevant and admissible by reason of § 490.065.2;[5] that the witness should have been permitted to state her opinion concerning an ultimate issue the trial court was to decide.

■■■ A contention that a trial court rejected admissible evidence is not a ground for complaint on appeal in a case tried by a judge without a jury. *In Interest of N.D.,* 857 S.W.2d 835, 838 (Mo.App.1993); *Gannon v. Nelsen,* 827 S.W.2d 278, 282 (Mo.App. 1992). "That is so because, on appellate review, this court, under Rule 73.01(c)(3) is required to consider admissible evidence which was rejected by the trial court and preserved." *Id.* If evidence should have been admitted but was refused, an appellate court, upon so determining, must decide, on the basis of the competent and admissible evidence, "what the judgment of the court should be." *Heavrin v. Shop 'N Save,* 922 S.W.2d 463, 465 (Mo.App.1996).

---

5. Section 490.065 provides:
 1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
 2. Testimony by such an expert witness in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

It has been suggested that § 490.065.2 did not change Missouri law; that "[p]rior to the enact-ment of Section (2), Missouri rejected the objection that expert opinion is inadmissible if it 'embraces the ultimate issue,'" quoting from *Wessar v. John Chezik Motors, Inc.,* 623 S.W.2d 599, 602 (Mo.App.1981). Hopkins, *Expert Testimony: New Rules, New Questions,* 46 J.Mo.Bar 175, 176 (1990).

There are cases in which admission of expert testimony concerning recommendations of child custody and visitation has been upheld and cases in which admission of such testimony has been denied. E.g., *see K.J.B. v. C.A.B.*, 883 S.W.2d 117, 121 (Mo.App.1994), and *M __D __ v. C __D __*, 691 S.W.2d 406, 408–09 (Mo.App.1985). It is not necessary for this court, under the facts of this case, to consider whether either approach would, per se, be an abuse of trial court discretion.

■ Offers of proof were made concerning the social worker's recommendations and the background on which her written report was based. In addition to her offer of proof testimony, the social worker testified at length concerning her observations of the child and the child's interaction with both parents. These observations extended over a period of at least a year immediately before the trial of this case.

The written report that was refused admission in evidence is before this court as a part of the legal file. A review of it reveals a repetition of the information that was part of the social worker's testimony that was admitted in evidence without objection. The only thing of substance included in the written report that was not included in the social worker's testimony was a proposed comprehensive custody-visitation plan and schedule. Even if this court were to conclude that it was error to not admit the written report, the duplicative nature of evidence otherwise before the trial court by reason of the social worker's testimony would defeat any claim of prejudice to husband. *See In Interest of N.D., supra.*

The trial court had the opportunity to evaluate the testimony of all the witnesses who appeared at trial. The weight to be given the testimony of each witness was for it to determine. *Breckner v. Coble,* 921 S.W.2d 624, 627 (Mo.App.1996). It was not required to accept the views expressed by any of the expert witnesses. *Id.; Roberts v. Roberts,* 668 S.W.2d 249, 252 (Mo.App.1984). The evidence was sufficient to support the custody award that was made. This court cannot say that the trial court abused its discretion. Point III is denied.

### Guardian Ad Litem's Report

The first point raised in the guardian ad litem's brief (GAL Point I) is directed to the language the trial court used in not following the guardian ad litem's recommendation as to child custody. In addition to filing "Findings of Facts, Conclusions of Law and Judgment and Decree of Dissolution," the trial court filed a separate "Memorandum." The two filings were made the same day.

The memorandum recites that the trial court, in deciding the case and entering its judgment, reviewed its notes and the respective proposed findings, conclusions, orders and judgments submitted by the parties. The memorandum states that the written findings included with the judgment "speak for themselves." The memorandum adds, however, that "because of their importance in finalizing the judgment," additional items are mentioned. Three numbered paragraphs follow that statement. Paragraph 2 states:

The best interests of the child require that the parties be awarded joint legal custody, with primary physical custody to be awarded to [wife] and liberal visitation to [husband]. The details of this are set out in the judgment. In this regard, the parties stipulated that the guardian ad litem need not attend the trial, and in fact, [the guardian ad litem] elected not to attend. Since the guardian ad litem chose not to participate in the trial, and since his reports were not subject to examination by the parties, the court elects to do what [husband's attorney] suggests in his letter, which is to ignore the reports of the guardian ad litem and make findings based on the evidence presented at trial. This is done in part because the guardian ad litem raised no significant doubt as to the ability of either party to function as custodial parent for the minor child.

The letter of husband's attorney to which the above quoted paragraph refers is included in the supplemental legal file that is part of the record on appeal. It is dated May 13, 1996. It is addressed to the trial judge. Its first page has a date stamp of the Circuit Clerk showing it was "Filed" May 14, 1996.

The letter advises the trial judge that "a copy of [husband's] Proposed Findings Of Fact, Conclusions Of Law, Judgment And Decree Of Dissolution Of Marriage" is enclosed. It states, "At the close of trial, the Court requested written arguments or suggestions from counsel. Please accept this letter as [husband's] Suggestions To The Court." The letter is 11 pages long.

The letter includes a section entitled *"THE GUARDIAN AD LITEM'S DUTIES AND INVOLVEMENT."* It suggests:

First of all, as the finder of fact, the Court can ignore all the reports of the GAL and make the Findings proposed by [husband] solely on the evidence presented at trial. In fact, under Proposed Conclusion of Law No. 12 . . . , [husband] suggests the Court do just that.

GAL Point I asserts the trial court erred "in ignoring the reports and recommendation of the GAL with respect to child custody and visitation because the GAL is the representative of the child in the proceedings and the trial court does not have the discretion to ignore the report and recommendations of the GAL in determining the best interest of the child in establishing custody and visitation rights, . . . "

■ Wife suggests the trial court's statement that the guardian ad litem's report was "ignored" was, in fact, a misstatement; that the record indicates the trial court reviewed the reports that the guardian ad litem submitted but chose not to follow his recommendation. This court agrees with that assessment.

The guardian ad litem's report concluded that both parents loved the child and were willing to provide a safe, secure and beneficial home for her. The guardian suggested that both parents were capable parents; that neither was an unfit parent. The trial court obviously considered the guardian ad litem's evaluation. Its memorandum which, in effect, set forth additional findings to those included with the judgment, points out that "the guardian ad litem raised no significant doubt as to the ability of either party to function as custodial parent for the minor child."

Additionally, information the guardian ad litem relied on in formulating his report was duplicative of evidence the trial court heard and relied on in entering the custody award. The guardian ad litem's report revealed he relied on information obtained from the two psychologists and the clinical social worker who testified at trial; information derived from conversations with husband's and wife's attorneys; a review of the pleadings and other filings in the court case; and information from the child's school. These were all sources of evidence adduced at trial. As previously observed, the trial court was not bound to follow the recommendation of the guardian ad litem nor was it bound by his opinion. *Weinstock, supra.* The trial court had sole responsibility for determining custody. *Brooks, supra.* GAL Point I is denied.

*Maintenance*

Husband's Point IV contends the trial court erred in awarding wife maintenance. He argues that the evidence at trial showed she was able to support herself through appropriate employment and was not in need of rehabilitative maintenance.

■ The trial court awarded maintenance in the amount of $250 per month for a period of three years. Wife requested maintenance for that period. She explained that she planned to return to college; that the time required to complete her college curriculum was three years at night school.[6]

■ "A spouse seeking maintenance must meet two statutory threshold requirements: The spouse must (1) lack sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs; and (2) be unable to support himself or herself through appropriate employment." *Buerge v. Buerge,* 935 S.W.2d

6. Although maintenance should generally not be prospectively terminated or restricted unless there is evidence of an impending change in the recipient spouse's financial condition, *Summerville v. Summerville,* 869 S.W.2d 79, 83–84 (Mo. App.1993), the trial court's award of maintenance for a set duration is appropriate in this case in that it is consistent with wife's own testimony and request, *Schroeder v. Schroeder,* 924 S.W.2d 22, 27 (Mo.App.1996).

390, 391–92 (Mo.App.1996), citing § 452.335.1.

An appellate court will not interfere with a trial court's award of maintenance absent an abuse of discretion. *Holland v. Holland,* 865 S.W.2d 867, 869 (Mo.App.1993). The burden of demonstrating abuse of discretion is that of the paying spouse. *In re Marriage of Tappan,* 856 S.W.2d 362, 365 (Mo.App.1993). In reviewing an award of maintenance, all evidence is viewed favorable to the decree; contrary evidence is disregarded. *Allen v. Allen,* 927 S.W.2d 881, 885 (Mo.App.1996). The decision of the trial court will be upheld even if the evidence could support a different conclusion. *Id.*

The trial court's findings included:

The court finds that [wife] lacks sufficient property, including the marital property apportioned to her under this Decree, to provide for her reasonable needs and is unable to support herself through appropriate employment such that it is appropriate that she be awarded maintenance in this matter. The Court has considered all relevant factors, including those outlined in Mo.Ann.Stat. § 452.335 (Vernon, 1988). The Court finds that [wife] intends to finish a paralegal degree at Drury College and intends to go part time while continuing her employment as an office manager with attorney Chris Wise.

The trial court further found that husband was guilty of financial misconduct. It determined that husband had transferred marital property without wife's prior consent under circumstances not in the ordinary course of business or for necessities of life. Its findings included that husband's behavior had been abusive toward wife.

Nonmarital property valued at $245 was set over to wife. She received marital property consisting of personal property valued at $11,397.84 and 20 acres of real estate in Wright County on which the parties' house trailer was located, property the parties valued at $18,000. The only income producing property included in wife's marital property was one-half of husband's retirement fund valued at $6,239 and Seligman Mutual Funds valued at $1,293.84. The retirement fund is not readily accessible—it is subject to taxes and penalties if money is withdrawn from it.

Wife's net monthly earnings are $1,167.72. She was awarded child support of $412.55 per month. She calculated her monthly expenses to be $2,302.14.

There was sufficient evidence to support the finding that wife lacked sufficient property to provide for her reasonable needs and that she was unable to support herself through appropriate employment.

Husband's net monthly income is $1,636.18. His expenses (after deducting amount he itemized for his daughter's living expenses and child care) total $1,520. Considering the trial court's broad discretion in evaluating the merits of each party's claimed expenses, there was no abuse of discretion in the trial court awarding maintenance to wife. Point IV is denied.

*Award of Attorney Fees, Guardian Ad Litem Fees and Costs*

Point V claims the trial court erred in awarding wife attorney fees and in ordering husband to pay guardian ad litem fees and court costs. He asserts the trial court's orders for him to pay these expenses were an abuse of discretion and against the weight of the evidence. Husband contends the evidence does not support these orders because (1) appointment of a guardian ad litem was not required and unnecessarily increased the amount of both parties' attorney fees, costs and length of trial; (2) any misconduct the court attributed to him "did not cause [wife] to incur unnecessary attorney fees," but he was caused to incur unnecessary attorney fees and costs by reason of her misconduct; and (3) the trial court failed to consider his ability to pay wife's attorney fees.

"The trial court is vested with broad discretion in ordering payment of attorney fees and said award is reviewable only for an abuse of discretion." *Harrison v. Harrison,* 871 S.W.2d 644, 647 (Mo.App. 1994). A trial court abuses its discretion when an award is clearly against the logic of the circumstances and is so arbitrarily and unreasonable that it shocks one's sense of

justice. *Lamont v. Lamont*, 922 S.W.2d 81, 86 (Mo.App.1996).

 Husband was ordered to pay $20,000 toward wife's attorney fees and court costs including $600 guardian ad litem's fee. This court, upon a review of the record on appeal, finds no abuse of discretion by the trial court in so ordering.

The trial court found:

1. [Husband] is guilty of financial misconduct in the manner in which he controlled, personally used and ultimately dissipated, through circuitous and unwise financial dealings, the bulk of the fire insurance proceeds, while denying [wife] access to these funds. This conduct of [husband] affects the courts [sic] orders as to property division, maintenance, and attorneys' fees.

. . . . .

3. Attorneys' fees in this case are extremely high, given the financial status of the parties. Normally parties are responsible for their own fees, but in this case the post separation financial conduct of [husband] demands an order assessing attorney fees, as set out in the judgment, as amended by interlineation.

and,

In connection with its orders for maintenance and attorney fees herein, the Court further finds [husband] to be guilty of financial misconduct as well as certain abusive behavior toward [wife] which includes, but is not limited to, certain verbal abuse, the transfer of certain marital properties without [wife's] prior consent and not in the ordinary course of business or for the necessities of life.

Husband and wife received $149,211.63 from Shelter Insurance Co. as a result of their residence burning. The settlement proceeds were first applied in payment of promissory notes secured by deeds of trust on the destroyed residence. There was a remaining balance of $79,048.38. Husband deposited $68,928.38 into a joint account maintained in his and wife's name but which he used as his personal account. He transferred $50,000 from the joint account to a money market account over which he had sole control. When he filed his petition for dissolution of marriage, husband closed the money market account and withdrew the $50,000. He put the $50,000 he withdrew from the money market account into a personal checking account in his name.

At trial husband could account for only the following amount of money from the personal checking account:

| | |
|---|---|
| Purchase of new vehicle and payment of sales taxes on purchase | $11,996.00 |
| Purchase of stock | 25,600.71 |

The stock husband purchased was later sold by him for $16,127.88. After meeting margin calls and paying commissions and loans secured by the stock, he received only $5,420 from the sale of the stock.

Husband did not account for $3,000 from the net insurance settlement proceeds that was not deposited to his and wife's joint account. An exhibit admitted in evidence indicated husband used $16,766 of insurance proceeds to pay attorney fees, $400 for a private investigator, $450 witness fees for the clinical social worker who testified at trial, and $300 for fees incurred in securing the services of one of the psychologists who testified at trial.

Husband acknowledged that wife did not receive any of the insurance proceeds to pay for her litigation costs or attorney fees. She borrowed money from her parents and obtained a new credit card and took a cash advance on it to have funds with which to pay attorney fees. Wife testified that the total amount that she received for her use from the fire insurance proceeds was $878.

There was no evidence that wife consented to husband's using the fire insurance proceeds he expended for his personal use. Husband also transferred other marital property without wife's consent. He transferred a tractor and brush hog to a neighbor without her consent. He made personal loans to friends and customers without her consent.

Wife testified husband exhibited abusive behavior toward her. She testified he was verbally abusive; that he demeaned and degraded her in front of their daughter.

Husband's annual gross pay was $31,000; $2,583.34 per month. Wife's net monthly

earnings were $1,167.72. The disparity of their incomes, husband's flagrant misuse and dissipation of marital property without wife's consent, and use of marital property to pay his own attorney fees and litigation costs support the trial court's order for husband to pay wife's attorney fees, the guardian ad litem fee and costs. The trial court did not abuse its discretion in so ordering. *See In re Marriage of Medlock,* 749 S.W.2d 437 (Mo. App.1988); *Hemphill v. Hemphill,* 710 S.W.2d 438 (Mo.App.1986). Point V is denied.

### Order to Pay Taxes

Point VI is directed to the trial court's order that husband "pay any capital gains taxes which may occur as a result of the failure to properly reinvest the proceeds from the fire." Husband contends the order is "indefinite, vague, uncertain and dependent upon a future contingency, in that there was insufficient evidence as to the existence of any such tax liability and no evidence of the amount of such tax liability." Husband further argues the trial court abused its discretion in entering the order because wife "was awarded a judgment against [husband] for [wife's] marital interest in the fire insurance proceeds expended by [husband]."

*Krane v. Krane,* 912 S.W.2d 473 (Mo. banc 1995), explains the requirements of certainty and definiteness with respect to dissolution orders and decrees:

> Generally, the law requires that a decree or judgment for money, to be enforceable, must be definite and certain. Traditionally, if a trial court found it necessary to consider external evidence in order to ascertain the specific amounts due under the order, the order was deemed too indefinite to be enforced. *See, e.g., Rodden v. Rodden,* 527 S.W.2d 41, 43 (Mo.App.1975) *overruled by Lay v. Lay,* 912 S.W.2d 466 (Mo. 1995); *Loomstein v. Mercantile Trust National Ass'n,* 507 S.W.2d 669, 670–71 (Mo. App.1974) *questioned by Toomey v. Toomey,* 636 S.W.2d 313, 316 (Mo. banc 1982). This Court has relaxed the requirement of definiteness and certainty, however, in the context of dissolution orders and decrees. In *Payne v. Payne,* 635 S.W.2d 18, 22 (Mo.

banc 1982), this Court held that a maintenance provision in a dissolution decree, even if facially uncertain in amount, is nevertheless valid so long as "[t]he trial court may upon motion determine the exact amount due in accordance with the agreement of the parties, and, then, upon proper application proceed to enforce the judgment." This Court later applied the same standard to child support awards. *Toomey v. Toomey,* 636 S.W.2d 313, 316 (Mo. banc 1982).

*Id.* at 475.

*Krane* explained further that payment of "medical expenses" was a sufficient directive to be enforceable. *Id.,* citing *Lay v. Lay,* 912 S.W.2d at 470. It then examined a provision that required parents to each pay one-half of their children's school and summer camp expenses. The court, in language adopted from an unpublished opinion of the Eastern District of this court, concluded that the precise language in the consent modification agreement before it for construction, considering the background of the case, could be " 'reduced to pristine certainty, so as to be enforceable.' " *Krane, supra,* at 477, citing *Echele v. Echele,* 782 S.W.2d 430, 437 (Mo. App.1989).

In this case there is no uncertainty as to what the court intended husband to pay. Husband was to pay any capital gains taxes that ultimately would be incurred on gain attributable to fire insurance proceeds the parties received following destruction of their residence. As the term " 'medical expenses' " defined by common everyday usage as supplemented by the Internal Revenue Code's definition of medical care is sufficiently clear "so as to be enforceable," *Krane, supra,* at 475, so is the term "capital gains taxes." The applicable subject for which those taxes might be incurred, the fire insurance proceeds from the destruction of the parties' residence, was readily identifiable. This court holds, consistent with *Krane,* that the order for husband to pay any such capital gains taxes is not "indefinite, vague, uncertain and dependent upon a future contingency" so as to be unenforceable.

■ Husband's claim that the order for him to pay capital gains taxes was "inequitable and an abuse of the trial court's discretion" is a challenge to the trial court's division of marital property. Other challenges to the division of marital property are addressed *infra*. Husband's complaint in Point VI is that the order for him to pay capital gains taxes on that award is inequitable because "[wife] was awarded a judgment against [husband] for [wife's] marital interest in the fire insurance proceeds expended by [husband]."

The trial court found husband was "guilty of financial misconduct in the manner in which he controlled, personally used and ultimately dissipated, through circuitous and unwise financial dealings, the bulk of the fire insurance proceeds, while denying [wife] access to these funds." The evidence supports that finding. The trial court acknowledged that the misconduct it found to have occurred affected the court's orders as to property division, maintenance and attorneys' fees. This court finds no abuse of discretion in the trial court's actions in directing husband to pay any applicable capital gains taxes. Point VI is denied.

### Distribution of Marital Property

Point VII alleges the trial court erred in considering husband's financial misconduct as a basis for making an "unequal division of marital property and debts." He contends the trial court's findings and orders were excessive because wife testified all she wanted was an equal division of the marital property. He further argues that the trial court "placed undue emphasis on [husband's] 'financial misconduct', failed to consider [wife's] misconduct" and this resulted in an inequitable division of the marital property and debts. He then complains, "The findings were based upon a judgment and decree drafted by [wife] with little actual consideration of the evidence by the trial court, and same resulted in an inequitable division of the marital property and debts."

Husband does not complain about the trial court's valuations of the parties' marital property. He complains only about its distribution and the "division of marital property and debts."

The trial court's detailed summarization of marital property discloses that husband was awarded marital property valued at $42,889. Wife was awarded marital property consisting of personal property valued at $11,397.84 and real estate valued at $18,000 totalling $29,397.84. Husband was further ordered to pay wife $17,781.50 to equitably compensate wife for husband's "dissipation of marital insurance proceeds." Wife had previously been awarded "$5,621.00 of state and federal income tax refund monies payable to the parties" for "temporary attorneys fees during the pendency of this case."

■ Husband argues this division of property was unjust in view of the manner the trial court distributed the parties' debts. In considering husband's argument it is appropriate to recognize at the outset that debts incurred by parties to a marriage during their marriage are not marital property and the trial court has no obligation to allocate responsibility for their payment. *Harper v. Harper*, 764 S.W.2d 480, 483 (Mo.App. 1989). However, if a trial court undertakes to direct responsibility for the payment of debts, consideration must be given to those responsibilities in distributing the marital property. *Id.*

Wife was assigned responsibility for payment of marital debts in the amount of $19,664. Husband was directed to pay $30,595. Disregarding the amount husband was required to pay wife for his dissipation of the fire insurance proceeds and the amount of income tax refunds she was awarded as a pendente lite award for attorney fees, the net awards to the parties would be:

| | Husband | Wife |
| --- | --- | --- |
| Marital property award | $42,889.00 | $29,397.84 |
| Debt allocation | 30,595.00 | 19,664.00 |
| Net | $12,294.00 | $ 9,733.84 |

■ This court finds no merit to husband's complaint about wife being allowed the income tax refunds for purposes of paying accumulating legal fees during the course of the litigation. Husband expended significant marital assets to pay his attorney fees

and other litigation expenses during that time. He is in no posture to complain.

Husband is likewise in no position to complain about the order that he repay $17,-781.50 to wife for funds he intentionally dissipated in anticipation of the dissolution action he filed. It was appropriate that his conduct be considered in dividing the marital property. *In re Marriage of Gourley*, 811 S.W.2d 13, 20 (Mo.App.1991).

Husband argues the trial court unfairly treated him because he used a majority of the insurance proceeds for household expenses. The trial court was not obligated to accept that explanation as to how the funds were used. "[T]he trial court is free to disbelieve witness' testimony or 'vague accounting' that they used expended money for living expenses." *Schneider v. Schneider*, 824 S.W.2d 942, 947 (Mo.App.1992). The trial court committed no abuse of discretion in its award of marital property. Husband's financial dealings were indefensible. The emphasis placed on them in allocating marital property and debts was not undue.

Husband's complaint that the trial court chose to enter a proposed judgment submitted by wife is, at best, a *non sequitur*. A judgment prepared for the court by one of the parties is reviewed by the same standard as any other judgment. *In re Marriage of V.A.E.*, 873 S.W.2d 262, 265 (Mo.App.1994).

"The matter of division of marital property is within the sound discretion of the trial court." *In re Marriage of Torix*, 863 S.W.2d 935, 938 (Mo.App.1993). There was no abuse of discretion in the division of marital property in this case. Point VII is denied. The judgment is affirmed.

CROW, P.J., and SHRUM, J., concur