Connie L. BABBITT (Roberts),
Petitioner–Respondent,

v.

David A. BABBITT, Respondent–
Appellant.

No. 22904.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 2000.

Stephen P. Carlton, Carthage, attorney for appellant.

Walter E. Williams, Joplin, attorney for respondent.

KENNETH W. SHRUM, Judge.

This is a domestic relations case, specifically an effort by Father to modify the child custody part of a dissolution decree. By his motion, Father asked that the larger share of physical custody of his son be placed with him. The trial court denied Father's request. Father appeals, claiming the trial court committed reversible error when it (1) refused to conduct an "in chambers" interview of a twelve-year-old child and (2) *sua sponte* eliminated Father's previously ordered physical custody of his son during portions of each summer. We disagree with Father's first argument but agree with his second. We affirm in part and reverse in part and remand with directions.

One child, Kyle, was born of the marriage of David Alan Babbitt (Father) and Connie Leann Babbitt (Mother). Kyle was born September 26, 1986. A "Judgment of Dissolution" dated March 12, 1996, gave Father and Mother joint legal custody of Kyle. It gave physical custody of Kyle to Mother, but also provided custody periods for Father. Specifically, it awarded custody to Father "at reasonable times to include but not limited to" the first and third weekend of each month, on enumerated holidays, on Father's Day, and "[t]hree ... separate two ... week periods every summer to be agreed upon by the parties." The decree stated that if the

parties failed to agree on when Father's summer custody was to occur, then it was to be as "designated by [Mother] in writing by April 15th of each year."

On March 16, 1998, Father moved to modify the dissolution judgment. Specifically, Father asked that the major part of Kyle's physical custody be placed with him rather than with Mother. Father's allegations of changes in circumstances were that Kyle "expressed an interest in living" with Father, "[Mother] denied [Father] right of reasonable visitation" and it would be in Kyle's best interest to live with Father.

After a trial at which only Father and Mother testified, the trial court found that Kyle's best interests would be served by leaving most of his physical custody with Mother and overruled Father's motion to modify. However, the court also found that "the visitation opportunity" for Kyle with Father "is not working, and it is not in [Kyle's] best interest." Accordingly, the court *sua sponte* modified the physical custody provisions of the original decree. In that regard, the court increased the frequency of Father's weekly custody of Kyle but eliminated all two-week periods of summer custody for Father. This appeal followed.

■ Father's first point maintains that the trial court committed reversible error when it refused Father's request that Kyle be interviewed "in chambers to ascertain [Kyle's] wishes as to his custodian and relevant matters within his knowledge" as authorized by § 452.385.[1] We disagree. The dispositive rule of law on this issue is that a § 452.385 interview is not

mandatory, *Portwood–Hurt v. Hurt,* 988 S.W.2d 613, 620 (Mo.App.1999), and a trial court is vested with discretion pursuant to § 452.385 to interview children in chambers. *Williams v. Cole,* 590 S.W.2d 908, 910–11[1] (Mo.banc 1979); *Hord v. Morgan,* 769 S.W.2d 443, 448[7] (Mo.App.1989). When a trial judge opts not to question a child in chambers about the child's custodial preference, then § 452.385 has no application. *Guier v. Guier,* 918 S.W.2d 940, 949 (Mo.App.1996).

■ In so stating, we acknowledge the long-standing rule that in custody proceedings, if the child involved is of sufficient age to form and express an intelligent custodial preference, the child should be allowed to do so, and the court must consider that preference along with the other facts and circumstances before it. *Ijames v. Ijames,* 909 S.W.2d 378, 380[7] (Mo.App.1995); *In re Marriage of Thompson,* 682 S.W.2d 849, 851[9] (Mo.App.1984). See § 452.375.2(8), RSMo Cum.Supp.1998.[2] However, a § 452.385 interview is not the exclusive procedure for presenting such evidence. " 'A parent has a right to call upon his children, if competent, to testify in a child custody proceeding where such evidence is relevant.' " *Hurt,* 988 S.W.2d at 620[15] (quoting *R.S. v. J.D.M.,* 542 S.W.2d 361, 362 (Mo.App.1976)). Father was free to call Kyle as a witness, get a ruling on his competency, and if Kyle was competent, ask about his custodial preference. Having foregone that opportunity, Father cannot show he was prejudiced by the trial court's refusal to interview Kyle.[3] Point I is denied.

1. Statutory references are to RSMo 1994 unless stated otherwise.

2. Section 452.375, RSMo Cum.Supp.1995 was in effect when this case was tried on August 17, 1998, but a 1998 amendment to the statute became effective August 28, 1998. Consequently, § 452.375, RSMo Cum.Supp. 1998 was in effect when the judgment was rendered and filed in February 1999.

3. We do not ignore *Kordonowy v. Kordonowy,* 887 S.W.2d 809 (Mo.App.1994), upon which

Father relies, but find it factually distinguishable. The claims of error there were that the trial court refused to allow minor children and an adult child to testify and also rejected a request for an in camera interview. *Id.* at 811. That is not what happened here. Father never proffered Kyle as a witness other than by requesting a § 452.385 interview. Moreover, Kyle was eleven years, eleven months old, not thirteen years old (the age of the eldest minor in *Kordonowy* ).

In his second point, Father charges the trial court with reversible error when the court, acting *sua sponte*, eliminated Father's time with Kyle for the two-week periods each summer. Among other reasons assigned, Father urges reversal because this was a modification of the original decree that Mother did not request. It is true that Mother neither filed an answer or other pleading seeking affirmative relief nor requested a change in the original decree as she presented her evidence. On the contrary, Mother testified that she had "no problem with [Father] spending time with [Kyle]." Mother testified that "other than the squabble on trying to work out the details on this visitation in the summer, ... there [had not] been any change of circumstances with Kyle since the decree of divorce was entered."

The "squabble" about summertime custody arose because Father insisted on selecting the beginning date of his two-week summer custody rather than accepting Mother's designated beginning date. Mother complained that Father insisted on "stacking" his weekend custody onto his two-week custody period despite Mother's objections; consequently, Father had Kyle sixteen to seventeen consecutive days three times each summer. Under that practice, Mother (who is now a school teacher) had only three weekends with Kyle all summer.

After hearing this and other similar evidence, the trial judge addressed Father and Mother as follows:

"[I]'s just obvious to the Court that you dislike each other intensely, if not hate each other intensely. And it's carrying over and affecting both of your relation-

ship with your son. And I wish there was some way I could correct that, but only the two of you can do that.

. . . .

The court's going to make some—*I can modify visitation without a change in conditions*, and I'm going to do that. I'm going to cure some of the problems we have so that we'll know specifically when visitation is, and that will be when it will be. And I'll take that under advisement and will make that order." (Emphasis supplied.)

■ This court shares the frustration and concern expressed by the trial judge. However, the problem with his approach is that it erroneously treats Father's two-week summer periods and his other designated times with Kyle as "visitation." Without designating it as such, the original dissolution judgment awarded the parties "joint physical custody" as that concept is defined in § 452.375.1(3).[4] We reach that conclusion based on the language of the court's decree, "that [Mother] shall have physical custody of the child for all periods of time other than periods when [Father] has physical custody for visitation," *see Nix v. Nix,* 862 S.W.2d 948, 951[2] (Mo. App.1993), and based on many other cases holding that a judgment which gives significant custody to both parents, as was done here, amounts to an award of joint physical custody. *See e.g. Stewart v. Stewart,* 988 S.W.2d 622, 624–25[2] (Mo.App.1999); *In re Marriage of Johnson,* 865 S.W.2d 412, 415[1] (Mo.App.1993); *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 396[3] (Mo.App. 1992).[5]

4. Section 452.375.1(3) provides:
   " 'Joint physical custody' means an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents."

5. This court has often reclassified a custody award *sua sponte* before resolving the parties' points on appeal. *See e.g. Tracy v. Tracy,* 961 S.W.2d 855, 859[11] (Mo.App.1998), *Webber v. Johnson,* 956 S.W.2d 952, 953 n. 1 (Mo. App.1997); *Francka v. Francka,* 951 S.W.2d 685, 689[1] n. 1 (Mo.App.1997); *Rinehart v. Rinehart,* 877 S.W.2d 205, 207[4] (Mo.App. 1994).

■ In *Stewart,* the western district noted that "there is often little or no practical distinction between" a joint physical custody award and one characterized as primary physical custody to one party with "liberal visitation" to the other. 988 S.W.2d at 624. The difference here, however, is significant. This follows because a visitation award entered per § 452.400[6] can be modified by the court "whenever modification would serve the best interests of the child." § 452.400.2. Proof of a substantial change in circumstances is not a precursor to a visitation modification under § 452.400.2.

■ The required standard is different, however, for modifying a joint physical custody award. Drastic modification of a joint physical custody decree requires evidence that will satisfy § 452.410.1.[7] *Nichols v. Ralston,* 929 S.W.2d 302, 305[2] (Mo.App.1996). "A change in circumstances ... is ... a precursor to a finding that the best interests of the child necessitate a modification of a prior custody decree based on the language of 452.410.1." *Guier v. Guier,* 918 S.W.2d at 947[5].

■ Here, Mother did not allege a change in circumstances, yet the trial court made what we deem a substantial change in the joint physical custody plan by eliminating all of Father's two-week summer custody periods with Kyle. Based on § 452.410.1 and cases such as *Nichols* and *Guier,* we find that the trial court misapplied the law and committed reversible error when it modified the joint custody plan in such fashion without considering whether a substantial change in circumstances had occurred.[8]

■ In her brief, Mother suggests that she has no desire to further litigate this matter should we decide—as we have—that the trial court erred by eliminating Father's two-week periods of summertime custody. She urges us to amend the judgment to give Father custody of Kyle two weeks of each month of the summer but asks that those two-week periods be Father's only summertime custody. This we cannot do. Although this court should, when possible, enter such judgment as the trial court should have entered so as to settle the rights of the parties, *see Oldfield v. Oldfield,* 688 S.W.2d 778, 781[4] (Mo. App.1985), and Rule 84.14, we cannot do so without a record and evidence upon which that function can be done with some degree of confidence in the reasonableness, fairness, and accuracy of the conclusion reached. *Moritz v. Moritz,* 844 S.W.2d 109, 113[5] (Mo.App.1992); *Grunden v. Nelson,* 793 S.W.2d 569, 576[15] (Mo.App. 1990). Here, Mother filed no pleading seeking the relief she now requests. Moreover, the trial judge's decision to eliminate Father's weekly custody was based on an erroneous application of the law; consequently, we cannot know how the trial judge would have resolved relevant but disputed fact issues. *Cf. Laiderman v. Irwin,* 701 S.W.2d 468, 469[1] (Mo. App.1985) (holding that judgment per Rule 84.14 is authorized if facts are undisputed and only dispute is legal significance of facts).

■ Accordingly, we reverse that part of the judgment that eliminated Father's weekly custody of Kyle during the summer months. We affirm in all other respects.

6. Section 452.400, RSMo Cum.Supp.1997 was in effect when this case was tried on August 17, 1998, but a 1998 amendment thereto became effective August 28, 1998. Thus, § 452.400, RSMo Cum.Supp.1998 was in effect when the judgment was rendered and filed in February 1999.

7. The relevant part of § 452.410.1 provides:
"1. [T]he court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

8. Mother never appealed; consequently, that part of the judgment that increased Father's custody rights to Kyle is final. Rule 81.05.

We remand with directions that the trial court enter judgment in accordance with this opinion.[9]

CROW, P.J., CONCURS.

PARRISH, J., CONCURS.

---

**9.** This record contains some evidence that Father manipulated and, on occasion, ignored certain parts of the original custody order. Interference by one parent with the other's decretal rights of custody constitutes a "changed condition that can form the basis for a modification." *A.B.C. v. C.L.C.*, 968 S.W.2d 214, 219 (Mo.App.1998). Whether Father's conduct could form a basis for modification was not an issue presented to the trial court or this court; consequently, that question remains unresolved in this case.