Sandra Lee (Welborn) BAKER, Plaintiff–Appellant,

v.

Kenneth Richard WELBORN, Defendant–Respondent.

No. 24207.

Missouri Court of Appeals, Southern District, Division Two.

June 19, 2002.

Joseph Aubuchon, Daniel E. Leslie, Union, for appellant.

No appearance for respondent.

JOHN E. PARRISH, Judge.

Sandra Lee (Welborn) Baker (mother) appeals the part of a modification judgment that granted additional visitation rights to Kenneth Richard Welborn (father) with the parties' children and the part that reduced the amount of child support father was required to pay from $382 per month to $368.[1] The part of the judgment that reduced the amount of child support father was required to pay is reversed and remanded with directions. In all other respects, the judgment is affirmed.

The modification judgment that is the subject of this appeal recites:

That on November 26, 1990, this Court entered its Judgment and Decree of Dissolution of Marriage herein; that thereafter the Court entered its Judgment of Modification on December 8, 1998; and that the said Judgment of Modification ordered that [mother] have sole legal custody of the children; that [mother] have primary physical custody of the children; and that [father] have rights of reasonable visitation and temporary custody and specific rights of visitation and temporary custody as set out therein.

The trial court made the following findings regarding the custody of the children and visitation rights:

. . .

5. That no evidence was introduced by either party of any facts unknown to the Court at the time of entry of the prior Judgment of Modification; that based upon facts that have arisen since the entry of the prior Judgment, there has been no change in the circumstances of the minor children and [mother], their custodial parent, requiring the modification of the provisions of the prior Judgment as to legal and primary physical custody as would be necessary to serve the best interests of the minor children. Section 452.410, RSMo.

6. That, based upon facts that have arisen since the entry of the prior Judgment, a modification of the Judgment as to visitation would serve the best interests of the children. Section 452.400.1,

---

1. Father filed a motion to modify in which he sought change of custody of the parties' children, child support and attorney fees. Mother filed a "Counter–Motion to Modify Child Support, Counter–Motion to Modify Visitation, and Counter–Motion to Require Posting of Bond Pursuant to § 452.344, R.S.Mo."

RSMo; and that such facts include the relocation of [mother] from Jackson County, Missouri, to Benton County, Missouri; the stable relationship of [father] with his paramour and the expressed wish of the children to be allowed to spend more time with their father.

7. That, after consideration of all relevant factors, including those set out in Section 452.375.2, RSMo (Sub-paragraphs (1) through (8)[)], the provisions of the Judgment entered on December 8, 1998, should be modified as to the visitation rights of the parties as set forth hereinafter, and such modification is in the best interests of the children.

. . .

The trial court ordered the modification judgment that had been entered December 8, 1998, "replaced and superceded" with respect to child custody and visitation as follows:

[Mother] shall retain sole legal custody and primary physical custody of the minor children of the parties (hereinafter referred to as "Heather, Holly and Hilary"); and that [father] shall have all rights bestowed on non-custodial parents under the law of the State of Missouri, including access to school records. These provisions in this Judgment regarding the children are to be construed as the "Parenting Plan" required by Section 452.375.9, RSMo.

[Father] shall have the following rights of specific visitation:

Every other weekend from 6:00 p.m., Friday to 6:00 p.m., Sunday.

Every Father's day from 8:00 a.m., to 6:00 p.m.

From December 26th at 6:00 p.m., through December 30th at 6:00 p.m.

One half of the period of the school spring break given to Heather, Holly and Hilary each year.

From Wednesday at 6:00 p.m., to Sunday at 6:00 p.m., during the Thanksgiving Holiday in odd-numbered years beginning in 2001.

[Father] shall have summer visitation commencing at 6:00 p.m., the second Sunday after the school in which the children are enrolled lets out for summer until August 15th at 6:00 p.m. [Mother] shall have temporary visitation during the summer on every other weekend from 6:00 p.m., Friday to 6:00 p.m., Sunday, commencing the Sunday before July 4th at 6:00 p.m., (If July 4th is on a Sunday, commencing that date) until the Sunday thereafter at 6:00 p.m.

. . .

[Mother] and [father] shall meet at the Missouri State Capital in Jefferson City, Missouri, to exchange the children for all periods of visitation.

. . .

The modification judgment found, with respect to child support:

That, based upon the reported 1999 income of the parties, [father's] monthly income is $1,400.00, but taking into account his support obligation for the other child in his physical custody, his gross monthly income for purposes of Form 14 is $1,125.00; that [mother's] gross monthly income is $1,237.00 for purposes of Form 14; and that there are no other additional child rearing costs as of the date of the trial. The Court further finds that there is no competent evidence that there would be a substantial change in either party's 2000 gross monthly income. The Court, therefore, finds that the presumed correct child

support amount as calculated pursuant to Rule 88.01 and Form 14 is $760.00 per month, and that [father's] support obligation is, therefore, $402.00 per month. The Court further finds that this does not result in a change in the existing child support amount of $368.00 by twenty percent or more, and that the present child support obligation should not be modified.

The modification judgment decreed "that [father] shall pay [mother] the sum of $368.00 per month for child support, commencing on April 1, 2001, and on the 1st day of each month thereafter, subject to further Orders of the Court, payable through the Family Support Collection Center, Jefferson City, Missouri. Child support shall abate in July of each year. [Mother] shall be entitled to claim Heather, Holly and Hilary as dependents for Federal and State Income Tax purposes."

This was a court-tried case. The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declared or applied the law. *Stowe v. Spence*, 41 S.W.3d 468, 469 (Mo. banc 2001).

■ Mother's first point on appeal asserts the trial court erred in modifying the terms of father's visitation because "the evidence was uncontroverted that the best interests of the minor children would not be served by additional visitation with father." It further asserts "there were no significant changes in circumstances to justify a change in visitation" and that "the trial court cited three reasons for the modification of visitation, two of which were

not changes in circumstances, and the third reason being a desire expressed by the children to live with the father, which by itself is not sufficient to warrant a modification." [2]

■ One of the issues asserted in Point I is that there were no significant changes in circumstances to justify a change in visitation. Section 452.400.2,[3] as applicable here, provides, "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, . . . ." "The criterion for change of visitation is best interests of the child." *Quackenbush v. Hoyt*, 940 S.W.2d 938, 944 (Mo.App. 1997). The trial court need not find a substantial change of circumstances in order to modify visitation. *Warren v. Warren*, 909 S.W.2d 752, 755 (Mo.App.1995). It may modify visitation if the modification would serve the best interests of the child. *Id.*

■ Mother argues, however, that the changes in "visitation" ordered by the modification judgment "are so dramatic that the visitation order is actually a joint physical custody plan"; that, therefore, the requirements for the change are those prescribed by § 452.410.1. Section 452.410.1 provides, with respect to modification of child custody, that "the court shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

**2.** Father filed no respondent's brief in this appeal. There is no penalty for a respondent's failure to file a brief. *In re Estate of Klaas*, 8 S.W.3d 906, 908 (Mo.App.2000). That omission, however, requires this court to adjudicate the appellant's claim of error with-

out benefit of whatever argument father, as respondent, might have made.

**3.** References to statutes are to RSMo 2000 unless stated otherwise.

Mother, in arguing that this case is a change of custody rather than a change in visitation, relies on this court's discussion of terminology in *Francka v. Francka,* 951 S.W.2d 685 (Mo.App.1997). *Francka* was a dissolution action. In awarding custody of the parties' child, the trial court, after awarding legal custody to the wife, characterized the parties' physical custody rights as "primary physical custody" for wife and "rights of visitation" for the husband. *Id.* at 689 n. 1. This court observed that the characterization of wife's rights as custodial and husband's as visitation was erroneous; that because each party was awarded significant periods of time, the award actually was one of joint physical custody. Section 452.375.1(3) provides that "joint physical custody" occurs when an order is entered that awards each parent "significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents."[4] *Id.* at 689 n. 1, citing *Rinehart v. Rinehart,* 877 S.W.2d 205, 207 (Mo.App.1994); *In re Marriage of Miller,* 876 S.W.2d 289, 290 (Mo.App.1994); *In re Marriage of Johnson,* 865 S.W.2d 412, 415 (Mo.App.1993).

Whether an award of "primary physical custody" results in an award of joint physical custody to both parents or an award of sole physical custody to one and visitation rights to the other was discussed in *Stewart v. Stewart,* 988 S.W.2d 622 (Mo.App. 1999), and in *Babbitt v. Babbitt,* 15 S.W.3d 787 (Mo.App.2000). *Stewart* explains:

> Since the time of the adoption of the joint custody statute, the appellate courts have attempted to deal with the issue of how to label physical custody awards in those cases in which the trial court has considered the award to be one of sole physical custody, but has also awarded more visitation than the traditional "every other weekend and two weeks in the summer." It is not always clear in such cases whether the award is one of sole physical custody, as the trial court designated it, or one of joint physical custody. *See, e.g., Ibrahim v. Ibrahim,* 825 S.W.2d 391, 396 (Mo.App.1992) (stating that the adoption of a specific visitation schedule would amount to an award of joint physical custody). Also not clear is the extent to which the specific designation of physical custody really matters. Many times, when the decree specifically awards significant times with each parent, the matter, in practical terms, appears to be one of labeling.
>
> For instance, there is often little or no practical distinction between an award characterized as joint physical custody, as in *Morton v. Stockdale,* 888 S.W.2d 362, 363 n. 1 (Mo.App.1994), and one characterized as primary physical custody to mother and "liberal visitation" to Father, as in *Patton v. Patton,* 973 S.W.2d 139[,] 142 (Mo.App.1998). Joint physical custody does not require an equal amount of time with each parent. *Tilley v. Tilley,* 968 S.W.2d 208, 213 (Mo.App.1998). Child support may be awarded, as appropriate, in cases of joint physical custody just as in cases of sole physical custody. § 452.375.11, RSMo Supp. 1997.

988 S.W.2d at 624.

*Stewart* concluded that "[a]lthough the trial court order named Mrs. Stewart primary physical custodian, ... Mr. Stewart is correct that, based on the authorities ... reviewed, the award should be considered an award of joint physical custody."

---

4. The applicable statute in *Francka* was § 452.375.1(2), RSMo Supp. 1995. The definition in the current revision, § 452.375.1(3), is unchanged from that in § 452.375.1(2), RSMo Supp. 1995.

*Id.* at 625. The characterization of physical custody did not affect the disposition, however, in that the case was remanded because there was no written plan of joint legal custody in the decree although the trial court had expressly granted the parties joint legal custody.

*Babbitt* discusses the issue mother argues in this appeal, viz., whether the applicable standard of modification of a prior decree should be based on change of custody requirements or change of visitation requirements. *Babbitt* concluded the trial court erroneously treated a father's two-week summer period and other designated times with his child as "visitation." *Babbitt* explained, "Without designating it as such, the original dissolution judgment awarded the parties 'joint physical custody' as that concept is defined in § 452.375.1(3)[RSMo Cum.Supp.1998]." 15 S.W.3d at 790. That conclusion was reached "based on the language of the court's decree, 'that [Mother] shall have physical custody of the child for all periods of time other than periods when [Father] has physical custody for visitation,' ...." *Id.* *Babbitt* then addressed language in *Stewart* regarding whether the characterization was of consequence, saying:

> In *Stewart,* the western district noted that "there is often little or no practical distinction between" a joint physical custody award and one characterized as primary physical custody to one party with "liberal visitation" to the other. 988 S.W.2d at 624. The difference here, however, is significant. This follows because a visitation award entered per § 452.400 [RSMo Cum.Supp.1998] can be modified by the court "whenever

modification would serve the best interests of the child." § 452.400.2. Proof of a substantial change in circumstances is not a precursor to a visitation modification under § 452.400.2.

> The required standard is different, however, for modifying a joint physical custody award. Drastic modification of a joint physical custody decree requires evidence that will satisfy § 452.410.1 [RSMo Cum.Supp.1998]. *Nichols v. Ralston,* 929 S.W.2d 302, 305[2] (Mo. App.1996). "A change in circumstances ... is ... a precursor to a finding that the best interests of the child necessitate a modification of a prior custody decree based on the language of 452.410.1." *Guier v. Guier,* 918 S.W.2d [940] at 947[5] [(Mo.App.1996)].

*Id.* at 791 (footnotes omitted).

*Babbitt* involved a motion to modify in which the father sought a larger share of physical custody with his son than the dissolution judgment provided. The trial court denied the father's motion. The trial court stated, however, that the "visitation opportunity" the judgment provided the father was "not working" and was "not in [the child's] best interest." [5] *Id.* at 789. *Babbitt* concluded the trial court's *sua sponte* lessening of time the father had with his son was a "[d]rastic modification" of the joint physical custody decree; that such modification required evidence of changed circumstances, citing *Nichols v. Ralston,* 929 S.W.2d 302, 305 (Mo.App. 1996). In *Nichols* the court was faced with the question of whether a modification modified child custody or visitation. *Nichols* observed:

**5.** The father in *Babbitt* was originally awarded custody " 'at reasonable times to include but not limited to' the first and third weekend of each month, on enumerated holidays, on Father's Day, and '[t]hree ... separate two ... week periods every summer to be agreed

upon by the parties.' " 15 S.W.3d at 788. The trial court, after hearing the modification motion, "increased the frequency of Father's weekly custody of [the child] but eliminated all two-week periods of summer custody...." *Id.* at 789.

In seeking the answer, we find this in § 452.375.1(2), RSMo 1994:

" 'Joint physical custody' means an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents."

We find no statutory definition of "visitation rights." However, § 452.400.1, RSMo 1994, refers to a parent who is "not granted custody of the child" as a "noncustodial" parent.

929 S.W.2d at 304.

The court concluded that the original judgment in *Nichols* placed the parties' child under her father's care and supervision a significant period of time ("almost 20 percent of each year"); that this was an award of joint physical custody. *Id.* at 304–05. The modification judgment in *Nichols* reduced the father's time with the child "to a ten-hour period twice a month (or in some instances thrice a month) plus a six-and-a-half-hour period on a few designated days alternating between even numbered and odd numbered years." *Id.* at 305 (footnote omitted). Under the modification judgment, the child was never with her father overnight. *Nichols* held that this resulted in the termination of joint physical custody awarded by the original judgment; that it placed the child in the sole custody of her mother with her father having only supervised visitation. On that basis, the court found the modification had been a modification of custody; that because no change of circumstances had been shown, the trial court erred in entering the modification.

■ Considering the analyses in *Stewart, Babbitt* and *Nichols*, this court concludes the requirements for modifying rights of parents following a dissolution of marriage must be determined on a case-by-case basis regardless of the terminology used in the judgment that is sought to be modified. If the judgment awards each parent "significant, ... periods of time during which a child resides with or is under the care and supervision of each of the parents," the parties have joint physical custody regardless of how that judgment characterizes their respective custodial rights. § 452.375.1(3); *Tracy v. Tracy,* 961 S.W.2d 855, 859 (Mo.App.1998); *Webber v. Johnson,* 956 S.W.2d 952, 953 n. 1 (Mo.App.1997); *Francka v. Francka, supra,* at 689; *Rinehart v. Rinehart,* 877 S.W.2d 205, 207 (Mo.App.1994).

■ If the time a parent is permitted to have a child or children reside with him or her, or is allowed to have the child or children under his or her supervision is, considering the entire custody scheme, altered significantly or, as suggested in *Nichols,* "drastically," a change of custody has occurred. If that time is changed to a lesser extent, considering the entire custody scheme, then a change of visitation rights occurs. As suggested in *Stewart, supra,* at 624, it is the substance of the award, not the designation of physical custody, that really matters in assessing what is attempted to be modified

In this case, the judgment that was before the trial court for modification granted both mother and father significant time with their children. The issue to be determined is whether the modification changed the relative status of father and mother to the extent that mother was no longer the primary physical custodian of the children or whether the modification did not affect mother's status as primary physical custodian but merely provided father with additional visitation time during which he would have the children in his physical custody and control. If the former, the modification would be a significant or "drastic" change in the parties' respective custody rights. If the latter, the modifica-

tion would be in the nature of a change in visitation privileges.

The modification increased the amount of time during the summer when the children would be with father. Prior to the modification, the children were to be with father six weeks during the summer, two weeks during each of the three summer months. The new schedule provides for father to have the children from the second Sunday after their school is out until August 15, with mother having the children every other weekend during that time. During other times of the year father will have the children every other weekend. Previously he had them on the first and third weekends and was to exercise his third weekend visitations during September, November, January, March and May "in the city of the children's residence, so long as it remain[ed] in the Kansas City area."[6] The visitations during the children's spring break were unchanged, as were the provisions regarding Mother's Day, Father's Day, Thanksgiving and Christmas.

Unlike what occurred in *Babbitt* and in *Nichols*, the changes in this case were not "drastic." This court finds the changes are, in effect, changes in the visitation schedule afforded father, the parent who is not the primary custodian of the children.[7] The applicable statute is the statute that addresses changes in visitation, § 452.400.2. The standard applied is the best interest of the children with no precursor finding of change of circumstances.

■ Mother's Point I further contends "the evidence was uncontroverted that the best interests of the minor children would not be served by additional visitation with father." A trial court is afforded broad discretion in its determination of visitation issues. *In re S.E.P. v. Petry*, 35 S.W.3d 862, 872 (Mo.App.2001). Appellate courts afford trial courts' decisions on those issues great deference. *Id.* A trial court's decision in visitation issues will not be overturned absent an appellant's demonstrating the judgment is not in the children's best interests. *Id. See also McElroy v. McElroy*, 910 S.W.2d 798, 805 (Mo. App.1995).

When asked if he wanted to present evidence, the guardian ad litem requested a short recess. Following the recess, he advised the judge, "Your Honor, I'm not going to call the girls, through an agreement with the parties. I will relay that the girls told me that they want to continue residing with mom on a primary custody basis but have visitation with dad on an increased basis during the summer." The modification judgment acknowledged that father resided in St. Louis, Missouri, and mother resided in Benton County, Missouri. It recited the "consideration of all relevant factors, including those set out in Section 452.375.2 RSMo (Sub-paragraphs (1) through (8))," and concluded modification of the judgment as to visitation was in the children's best interests.

6. Mother had moved from the Kansas City area to Benton County, Missouri, before the hearing that resulted in the present modification judgment.

7. During the hearing, the parties referred to the changes that were sought as changes in visitation. Mother testified she thought the summer visitation schedule needed clarification but she did not want father to have additional visitation. During closing argument, father's attorney told the trial court that regardless of whatever else occurred "the visitation arrangements have to be changed." Arguably, the issue the parties tried, by consent, was modification of father's visitation rights; that no issue of custody was presented to the trial court. *See Keck v. Keck*, 930 S.W.2d 486, 488 (Mo.App.1996); *In re Marriage of Burroughs*, 691 S.W.2d 470, 475 (Mo. App.1985).

The factors enumerated in § 452.375.2 deal with custody determination. Nevertheless, those factors are appropriately considered in determining whether changes should be made in visitation rights. *Keith v. Keith,* 708 S.W.2d 350, 352 (Mo.App.1986). One of those factors, the provision in § 452.375.2(8), is the wishes of the child as to his or her custodian. Studies and reports of guardians ad litem may, likewise, appropriately be considered by trial courts in making their decisions regarding the best interests of children. *Leimer v. Leimer,* 715 S.W.2d 310, 313 (Mo.App.1986). "Further, courts should encourage the continued love, interest and affection of divorced parents for their children, and where both parties are proper parents each has a right to reasonable access to the children." *Id., citing Geary v. Geary,* 697 S.W.2d 318, 320 (Mo. App.1985).

There was ample evidence before the trial court that both parents are proper parents. It was evident that the children sought loving relationships with each. The change in visitation permitted father to have a more prolonged period of visitation with the children during the summer. It is consistent with both parents being entitled to reasonable access to the children and consistent with the children's rights to know both parents. Point I is denied.

Point II is directed to modification of child support. The trial court found:

That, based upon the reported 1999 income of the parties, [father's] monthly income is $1,400.00, but … his gross monthly income for purposes of Form 14 is $1,125.00; that [mother's] gross monthly income is $1,237.00 for purposes of Form 14; and that there are no other additional child rearing costs as of the date of the trial. The Court further finds that there is no competent evidence that there would be a substantial change in either party's 2000 gross monthly income. The Court, therefore, finds that the presumed correct child support amount as calculated pursuant to Rule 88.01 and Form 14 is $760.00 per month, and that [father's] support obligation is, therefore, $402.00 per month. The Court further finds that this does not result in a change in the existing child support amount of $368.00 by twenty percent or more, and that the present child support obligation should not be modified.

The modification judgment recites:

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that [father] shall pay [mother] the sum of $368.00 per month for child support, commencing on April 1, 2001, and on the 1st day of each month thereafter, subject to further Orders of the Court, payable through the Family Support Collection Center, Jefferson City, Missouri. Child support shall abate in July of each year. [Mother] shall be entitled to claim Heather, Holly and Hilary as dependents for Federal and State Income Tax purposes.

Point II asserts that father was originally ordered to pay child support in the amount of $382.00 per month; that the modification judgment reduced the amount of child support payable to $368.00 per month. Point II argues the trial court erred with respect to child support in the following respects:

(1) [T]he court abated father's child support during the month of July, without a finding that Rule 88.01 and Form 14 were unjust and inappropriate; (2) the father's income was miscalculated and income should have been imputed because he testified specifically that he had his own roofing business, that he earned $10.00 per hour working full time, and that he often worked for cash; (3) the

court cited specifically that there was not a change in the existing child support amount by 20% or more and that the present child support obligation should not be modified, and the court specifically found no change of circumstances to warrant a modification of child support but did so anyway without a Form 14 being prepared or filed by the court to justify a reduction.

■■■■ Although the modification judgment stated the child support award should not be modified, it misstated the amount of that support. It stated the amount of support father was required to pay was $368 per month. However, the child support father was required to pay and which mother sought to modify was $382 per month.[8] This court has authority to correct plain and manifest error or mistake in a judgment or decree. *Milde v. Milde*, 723 S.W.2d 471, 474 (Mo.App.1986). The amount of $368 per month that appears in the modification judgment as the amount of child support to be paid by father should be stricken and the amount of $382 per month inserted as the amount of child support father is ordered to pay.

■■ Mother makes the same argument regarding the trial court's order that child support father pays shall abate in July of each year. She contends this is contrary to the finding "that the present child support obligation should not be modified." As observed in n. 8, *supra*, the legal file includes no copy of the original dissolution judgment. A copy of a prior modification judgment is in the legal file; however, it

made no change in child support from that provided in the dissolution judgment. Thus, the record does not reveal whether the July abatement is a change from what was previously ordered.

■■ As appellant, mother had the duty to include in the record on appeal those parts of the court files necessary for the determination of all questions presented on appeal. Rule 81.12(a); *Nolfo v. Dubin*, 861 S.W.2d 136, 138 (Mo.App.1993); *Flora v. Flora*, 834 S.W.2d 822, 823 (Mo.App. 1992). "Statements of fact in a brief which are unsupported by the record are not evidence, hence they supply no basis for appellate review of alleged trial court error." *In re Marriage of Osborne*, 895 S.W.2d 285, 289 (Mo.App.1995). Unlike the issue presented with respect to the amount of monthly child support that had previously been ordered paid, whether the original support order provided for abatement of child support in July cannot be ascertained from the record on appeal. Thus, the issue with respect to it that mother seeks to raise in Point II is not subject to appellate review.

■■ The final issue included in Point II is mother's argument that the trial court should have imputed additional income to father for calculating presumed child support. The trial court determined father's monthly gross income to be $1,400 for calculating presumed child support. The trial court relied on a notice father received from the Internal Revenue Service (IRS) in calculating the monthly gross

8. The legal file component of the record on appeal filed in this court does not include a copy of the original dissolution judgment. However, mother's Counter–Motion to Modify alleged father had been ordered to pay child support in the amount of $382.00 per month. A part of father's reply was denominated "Answer to Counter–Motion." It admitted the allegation in mother's Counter–Motion regarding the amount of child support father had been ordered to pay. Arguably, a copy of the dissolution judgment was "necessary to the determination of all questions to be presented" in this appeal and should have been included in the legal file. *See* Rule 81.12(a). A better practice would have been for mother to include a copy of the dissolution judgment as part of the legal file in this appeal.

income. The notice stated father's adjusted gross income was $16,800 for the year prior to the evidentiary hearing. That amount divided by 12 months reveals an average monthly gross income of $1,400.

Mother bases her argument that additional income should have been imputed to father on his testimony that he averaged about $10 per hour in his work; that he was sometimes paid in cash and that he pays his employees in cash. Father testified he reported his cash business transaction to the IRS.

■ It is not an abuse of discretion for a court to use a party's tax records to determine income for calculating a child support award. *Bauer v. Bauer,* 28 S.W.3d 877, 888 (Mo.App.2000). Mother's claim that, under the facts of this case, the trial court erred in not imputing additional income to father is denied.

The part of Point II requesting father's monthly child support to remain at $382 is granted. In all other respects Point II is denied. The part of the modification judgment setting father's child support at $368 per month is reversed. The case is remanded with directions that the trial court correct the modification judgment to provide for payment of child support by father in the amount of $382 per month. In all other respects, the judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.