**In the Interest of D.M.S. and S.A.M.I.**

**M.I., Appellant,**

v.

**M.L.S., Respondent.**

**No. 24718.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 5, 2003.

J. Michael Rumley, Kansas City, MO, for Appellant.

Dennis Owens, Kansas City, MO, David E. Bailey, Clinton, MO, for Respondent.

JAMES K. PREWITT, Presiding Judge.

M.I. ("Mother") appeals from a judgment that modified an initial custody decree by changing primary physical custody of D.M.S. from Mother to M.L.S. ("Father") and granted Father primary physical custody of S.A.M.I. In five of Mother's six points on appeal, she contends that the trial court's findings that changed circumstances occurred to warrant a modification in custody of D.M.S. were not supported by substantial evidence. In her sixth point, she argues that the trial court erred in finding that it would be in the best interests of the two minor children to be placed in the primary physical custody of Father.

Mother and Father, who were never married, have two children, D.M.S. (born May 4, 1996) and S.A.M.I. (born October 6, 1998). Mother has one other child, M.W., whose custody is not at issue in this case. On August 18, 1998, Father was declared the father of D.M.S. and Mother and Father were awarded joint legal custody of the child, with Mother designated the primary physical custodian.

On October 23, 2000, Father filed a motion to modify decree of paternity as to child custody and support with respect to D.M.S. Mother filed an answer and counter-motion to modify the paternity decree as to child visitation on December 20, 2000.

On February 16, 2001, Father filed a petition for determination of paternity, joint custody, and visitation concerning S.A.M.I. Mother filed an answer and counter-petition for determination of parentage on March 22, 2001. The trial court consolidated the cases involving the two children.

The trial was held in July and December of 2001, and on December 20, 2001, the trial court entered its judgment in the cases. The judgment included findings that Father was the father of both D.M.S. and S.A.M.I.; substantial and continuing changes had occurred such that the prior custody, visitation, and support judgment regarding D.M.S. should be changed; and it was in the best interests of both children for Mother and Father to be awarded joint legal custody of D.M.S. and S.A.M.I., with Father named their primary physical custodian. Mother's appeal followed.

Mother's first five points relate to the custody modification involving D.M.S. Mother contends that none of the trial court's findings of changed circumstances constituted a substantial change sufficient enough to warrant the modification of primary physical custody, and that none of the findings were supported by substantial evidence. The trial court listed five sub-

stantial and continuing changes in D.M.S.'s circumstances that it determined warranted the modification. They are listed below; Mother addresses each of the five circumstances as separate points.

    A.  [D.M.S.] being physically abused in 2000 by [Mother's] live-in paramour Chico Cook ["Cook"];

    B.  [D.M.S.] being burned by a cigarette while riding in the back seat of [Mother's] car on the lap of a person she had picked up;

    C.  By [D.M.S.] witnessing arguments between [Mother] and . . . Cook;

    D.  By [D.M.S.'s] sister, [S.A.M.I.], and his half-brother, [M.W.] witnessing a knife fight in the summer of [2001] that involved passengers in [Mother's] car; and,

    E.  [D.M.S.] being excessively absent from preschool.

■■■ We will affirm a judgment in a custody modification case if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *In re Marriage of Eikermann,* 48 S.W.3d 605, 608 (Mo.App.2001). When there is conflicting evidence, it is in the trial court's discretion to determine the credibility of the witnesses, and accept or reject all, part, or none of the testimony it hears. *Id.* In assessing the sufficiency of the evidence, we examine the evidence and its inferences in the light most favorable to the trial court's judgment. *In re McIntire,* 33 S.W.3d 565, 568 (Mo.App.2000).

■■■ Greater deference is given to a trial court's determination in matters involving child custody than in any other type of case. *Id.* We exercise extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and will do so only upon a firm belief that the judgment was wrong. *Eikermann,* 48 S.W.3d at 608.

■■■ The criteria under which a trial court may modify a child custody decree is established by § 452.410, RSMo 2000. *Beckwith v. Giles,* 32 S.W.3d 659, 664 (Mo. App.2000). "[T]he court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." § 452.410.1, RSMo 2000. There is a presumption that the party awarded custody in the original decree is a suitable custodial parent, and the party seeking a change of custody bears the burden of proving a change in circumstances requiring modification. *Eikermann,* 48 S.W.3d at 609. A change in circumstances that warrants modification must be substantial or significant, but not necessarily continuing in nature. *McIntire,* 33 S.W.3d at 569.[1]

■■■ As this is an appeal from a judge-tried case, the appellate court is concerned only with the correctness of the result, not the route taken to reach it. *Hunt v. Hunt,* 65 S.W.3d 572, 579 n. 10

---

1. We note that Chapter 452, specifically §§ 452.410 and 452.375.2 (discussed later in this opinion), which addresses dissolution of marriage, has been applied in cases in which the mother and father never married. *See Abernathy v. Meier,* 45 S.W.3d 917, 920, 922 (Mo.App.2001) (Mother and father never married and appellate court applied § 452.410 to analysis in modification of child custody case.); *Tompkins v. Baker,* 997 S.W.2d 84, 90 (Mo.App.1999) (Utilizing § 452.375.2 in analysis of best interests is not altered by the fact that the mother and father were never married.).

(Mo.App.2002). We will affirm a judgment that reaches the correct result even if the trial court has given a wrong or insufficient reason for its decision. *Id.*

The first changed circumstance listed by the trial court was that Cook, Mother's live-in boyfriend, had physically abused D.M.S. in 2000. There was testimony that after a small hole had been burned in D.M.S.'s bed, Cook grabbed the child and spanked him. D.M.S. had retrieved a lighter from a counter, where it had been left within his reach.

Mother's mother, Francis, testified that when she confronted Cook about the incident, D.M.S. ran out of his room to her. Cook told D.M.S. to go back to his room, pushed him, and closed the front door of the house to keep Francis from entering. Francis did enter and took D.M.S. to the home of another daughter who lived nearby. An argument ensued between Cook and Francis over his treatment of the children, and Francis later called Father to tell him of the incident after which time she and Father spoke with a juvenile officer and Father told the officer that he thought the children were being abused.

There was testimony that Francis was aware that Cook had been whipping D.M.S., which left welts. Although there were no pictures admitted into evidence showing that level of injury, pictures were introduced during Mother's testimony showing burn marks and bites on D.M.S.

The second changed circumstance listed by the trial court was that D.M.S. had been burned by a cigarette while riding in the back seat of Mother's car, seated on someone's lap. In order to give two men a ride home from a barbecue, Mother placed the car seats normally used for D.M.S. and M.W. in the trunk of her car, and those two children sat on the laps of the two men. Cook and S.A.M.I. were also in the vehicle, and S.A.M.I. was in a car seat. The two men in the back seat were smoking and when D.M.S. attempted to convince one of the men to roll down a window, he was burned by a cigarette. Although Mother initially testified that she made the two men get out of the car and walk the rest of the way, she actually allowed the men to stay in the car, with the children sitting on their laps, and only took away their cigarettes. She also admitted that the incident was not the only time that one of her children had ridden in a vehicle without proper restraints or a car seat.

The trial court's third changed circumstance was that D.M.S. had witnessed arguments between Mother and Cook. According to testimony, during a trip to Great Falls, Montana, Mother and Cook argued over his treatment of one of Mother's friends. Later that night, after Cook had been drinking, they argued again, and Cook attempted to take Mother's car to return to Missouri. The extent of the argument was such that the police were called and Cook was arrested. With regard to the children, Mother simply testified that all of the children were in bed at the time of the argument and subsequent police activity. A few days later, Mother and the children returned to Missouri; Cook did not accompany them because he was still in jail.

The fourth changed circumstance listed by the trial court refers to an incident in which S.A.M.I. and M.W. witnessed a knife fight that involved passengers in Mother's car. Mother gave three men a ride to Collins, Missouri, one of whom had been beaten up and another who had taken some pills and passed out. During the trip, M.W. was seated next to, or on the lap of, the man who was passed out and "laid up against the door." Mother specifically took gravel roads because M.W. was not restrained in any way.

When they arrived at their destination, a house that Mother described as "the big drug house in town," there was a fight between the men in the car and at least one man at the house. One of Mother's passengers displayed a knife and another man involved in the fight had a baseball bat. At some point, Mother threw a beer bottle at one of the men. S.A.M.I. and M.W. were hanging out of the window of the car crying and yelling for their mother, and Mother responded to S.A.M.I. by telling her, "Get your fuckin' ass back in the car."

The fifth and final changed circumstance expressly listed by the trial court was that D.M.S. had been excessively absent from preschool. Mother admitted that D.M.S. missed numerous days of preschool. She attributed his absences to his dislike of the teacher and head lice in the classroom, although neither D.M.S. nor M.W. contracted it and were in the same class.

In her first five points, Mother attempts to argue that the overwhelming weight of the evidence reflects that none of the changed circumstances delineated by the trial court were supported by substantial evidence or significant enough to warrant a modification in the custody of D.M.S. However, she makes her argument by characterizing the evidence in the light most favorable to herself. As outlined above, our standard of review requires us to review the record and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment. *Wallace v. Chapman*, 64 S.W.3d 853, 866 (Mo.App.2002).

Having reviewed the record, substantial evidence exists to support the findings and the trial court's conclusion that changed circumstances of a substantial nature had occurred with respect to D.M.S. to warrant a modification in his custody. Points I through V are denied.

Before proceeding to the discussion and analysis of Point VI, we want to acknowledge the line of cases where the modification that occurred was not a modification of a child custody decree, but rather a change in visitation. *See, e.g., Baker v. Welborn*, 77 S.W.3d 711, 715–19 (Mo. App.2002). As noted above, modifying a child custody decree requires a finding under § 452.410, RSMo 2000, that there is a substantial change in circumstances that warrants the modification and that the modification is necessary to serve the best interests of the child. *Beckwith*, 32 S.W.3d at 664; § 452.410.1, RSMo 2000. However, a change in visitation is addressed using § 452.400.2, RSMo 2000, and the standard applied is the best interest of the child, with no precursor finding of a substantial change in circumstances necessary. *Baker*, 77 S.W.3d at 719; 452.400.2, RSMo 2000.

In the custody decree involving D.M.S., Mother and Father were awarded joint legal custody, with primary physical custody awarded to Mother subject to visitation by Father for five days each month and two weeks in the summer. In its judgment here, the trial court retained the joint legal custody award, but named Father primary physical custodian subject to specific visitation rights for Mother, which consisted of alternating weekends and certain holidays.

Appellate courts have found there is little or no practical distinction between an award that is denominated as a joint physical custody award and one that awards primary physical custody to one party and liberal visitation to the other. *Id.* at 716. An award of joint physical custody does not require an equal amount of time with each parent. *Id.*

Thus, it may be argued here that the child custody decree with regard to D.M.S.

was a joint physical custody award both initially and after the trial court's judgment on Mother's motion to modify. Further, under that scenario, the changes stipulated by the trial court may not have represented a drastic modification, but rather a change in visitation, and it would not have been necessary for the trial court to have found a change in circumstances prior to determining whether the modification was in the best interest of D.M.S. *Id.* at 719.

Within *Baker* we noted that if the modification changed the relative status of the parties to the extent that the mother was no longer the primary physical custodian, then the modification would be considered a significant or drastic change in the parties' respective custody rights, signifying the necessity for the trial court to find a substantial change in circumstances. *Id.* at 718. If the modification, according to *Baker,* did not affect the mother's status as primary physical custodian and only provided the father with additional visitation, then it would be in the nature of a change in visitation, where it is not necessary for the trial court to find a substantial change in circumstances. *Id.*

Our situation here is similar to the first described in *Baker* and it, therefore, was necessary for the trial court to find a substantial change in circumstance with regard to D.M.S. As indicated earlier in the discussion, substantial evidence existed to support the trial court's findings and conclusions that changed circumstances of a substantial nature had occurred with respect to D.M.S. to warrant a modification in custody, leading to our denial of Mother's Points I through V.

In her sixth point, Mother contends that the trial court erred in finding that it was in the best interests of D.M.S. and S.A.M.I. to be placed in the primary physical custody of Father. Mother argues that the trial court failed to consider all of the factors required under § 452.375.2, RSMo 2000, and inappropriately took into consideration the educational level and economic status of Mother and Father and their immediate families.

With respect to D.M.S., it was a custody modification proceeding; however, for S.A.M.I., it was an initial custody determination. Our general standard of review is the same whether the judgment is an initial custody determination or a modification in that, in determining the sufficiency of the evidence to support the decree in a child custody proceeding, the appellate court will accept as true evidence and inferences favorable to the trial court's judgment and disregard all contrary evidence. *H.J.I. by J.M.I. v. M.E.C.,* 961 S.W.2d 108, 116 (Mo.App.1998). The judgment of the trial court will be sustained unless there is not substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* The judgment will not be reversed unless the we are left with a firm belief that the decree or judgment of the trial court was wrong. *Id.*

For both an initial custody determination and a modification proceeding, once the trial court determines that a significant change has occurred in the circumstances of a child or the child's custodian, the trial court must then determine whether a particular custody arrangement or a modification of custody is necessary to serve the best interests of the child. *Bates v. Jackson,* 28 S.W.3d 476, 479 (Mo. App.2000); *Wallace,* 64 S.W.3d at 864. In an initial custody determination, the trial court must consider the statutory factors as stated in § 452.375.2, RSMo 2000. *Bohac v. Akbani,* 29 S.W.3d 407, 412 (Mo. App.2000). In deciding the best interests

of a child in a custody modification proceeding, the trial court must consider all relevant factors, including the statutory factors found in § 452.375.2, RSMo 2000. *Beckwith*, 32 S.W.3d at 664.

■■■ We presume that the trial court reviewed all evidence and based its decision on the child's best interests. *Wallace*, 64 S.W.3d at 864. The trial court is considered to have properly considered the statutory factors when it made its decision. *Beckwith*, 32 S.W.3d at 664. A trial court is not required to expressly state which of the factors it relied on in its award of custody. *Edmison ex rel. Edmison v. Clarke*, 988 S.W.2d 604, 608 (Mo. App.1999).

The factors that the trial court shall consider under 452.375.2, RSMo 2000 are as follows:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the courts finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

In the judgment, as a footnote to his determination that it was in the best interests of both D.M.S. and S.A.M.I. to have Father as their primary physical custodian, the trial judge stated:

In short, all children need consistency, stability, structure, nurturing and a caregiver who places the children's needs above the caregiver's needs. [Mother], since 1998, has become unstable and inconsistent in relations with men, residences, and employment. Her needs, those of her paramours or friends come before those of her children. She is not in an environment that nurtures children. Unfortunately, she and few if any of her family have been able to finish high school. And she was having trouble getting [D.M.S.] to preschool last year. Also, her immediate family has convictions for serious criminal offenses—armed robbery, statutory rape and murder. Now, [Father] has no clean slate—but it's a lot better than in 1998—and now a lot better for the kids. He and his family are consistent, stable, structured and nurturing of their family members. They are generally educated and self sufficient. And, great consider-

ation has been given to the separation of [S.A.M.I.] and [D.M.S.] from [M.W.]. I believe in the long run it will be best for [D.M.S.] and [S.A.M.I.]. I cannot say what it's [sic] effect will be on [M.W.]—but that is not the case I have to decide.

Considering the evidence before the trial court and the eight statutory factors, since both Mother and Father expressed an interest in having custody of both D.M.S. and S.A.M.I., the first factor does not favor either party. With regard to the second factor, the trial court expressly found that Mother had "become unstable and inconsistent in relations with men, residences, and employment, ... [and that] [h]er needs, those of her paramours or friends [came] before those of her children. She is not in an environment that nutures children."

As noted in the discussion of Points I through V, the trial court's findings in this regard were supported by substantial evidence and are not against the weight of the evidence. This factor speaks to her fitness as a parent and strongly supports Father and the conclusion that the custody modification for D.M.S. and custody determination for S.A.M.I were in the best interests of the children. *See In re Marriage of Dieterle*, 960 S.W.2d 556, 559 (Mo. App.1998).

With regard to the third factor, there was evidence that the children interacted well with both parents, as well as other members of Mother and Father's families, with specific mention of grandparents and an aunt. However, given the testimony concerning Mother's propensity to have friendships with those who would contribute to a detrimental environment for the children, such as Cook and the men involved in the fight, this factor favors Father.

For the fourth factor, there was testimony that Mother had denied Father visitation and that she interfered with Father's ability to speak with D.M.S. by phone. Therefore, the fourth factor favors Father.

In addressing the fifth factor, evidence before the trial court showed that D.M.S. had been excessively absent from preschool. In addition, the trial court found that Father and his family provided a more stable, consistent, structured, and nurturing environment. Viewed together, the trial court's findings favor Father on this factor. *Wallace*, 64 S.W.3d at 865.

The evidence concerning the abuse of D.M.S. by Cook while under Mother's care and her placement of the children in precarious situations such as the knife fight or transporting the children while not properly restrained on in car seats, provide the necessary basis for this factor to favor Father. A parent placing one child in imminent danger provides prima facie evidence of imminent danger to the other children under that parent's care. *See In Interest of M.R.F.*, 907 S.W.2d 787, 796 (Mo.App.1995).

Regarding the seventh factor, there was no evidence that either Mother or Father intended to move. The trial court found that Mother's residences were unstable and inconsistent. Father, however, lives on a farm that has been in his family for over one hundred years. Thus, this factor favors Father.

For the eighth and final factor, the record contains no evidence regarding the wishes of either D.M.S. or S.A.M.I. regarding their placement. Accordingly, this factor does not favor either party.

On six of the eight statutory factors, the trial court made findings favoring Father, with the other two found as neutral. Having reviewed the record, we find substantial evidence to support all of those findings.

The trial court's determination that it was in the best interests of both D.M.S. and S.A.M.I. to have Father as their primary physical custodian was not in error. Point VI is denied.

The judgment is affirmed.

PARRISH and SHRUM, JJ., concur.